[No. S081934. May 31, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE JUAN GARCIA, Defendant and Appellant.

## COUNSEL

Richard Such and Kathleen Kahn, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias, Richard Rochman, Janet Neeley and Lisa H. Ashley Ott, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—A jury convicted defendant Jose Juan Garcia of willfully failing to register as a sex offender. (See Pen. Code, § 290, subds. (a)(1), (g)(2).)[1] In his defense, he claimed he was unaware of the registration requirement, but the jury evidently disbelieved him. On appeal, he unsuccessfully argued that the trial court erred in failing to instruct the jury that a conviction for willful failure to register requires proof of *actual knowledge* of the registration requirement. As we explain, we agree with defendant that section 290 requires a showing he actually knew of the registration requirement, and we agree that the court erred in failing to so instruct, but we also find the error harmless under the circumstances in this case.

Defendant admitted two prior "strike" convictions (§ 1170.12, subd. (a)) and one prior prison term enhancement (§ 667.5, subd. (b)). The court struck one of the strike allegations, as well as the prison term enhancement, and

---

[1]Subsequent statutory references are to the Penal Code.

sentenced defendant to a total term of six years in prison (twice the aggravated three-year term). (See § 1170.12, subd. (c)(1).) In addition to the mens rea issue previously mentioned, we also will discuss whether the court improperly used an element of the section 290 offense (namely, defendant's prior conviction under § 288, subd. (a)) to double his punishment, under the "Three Strikes" law, for failing to register. We conclude the court properly applied the Three Strikes law in this case.

## I. The Facts

We take the following uncontradicted facts largely from the Court of Appeal opinion. Defendant stipulated that on December 4, 1990, he was convicted of two unspecified felony sexual offenses, which required that he register as a sex offender under section 290, subdivision (a)(1). Defendant also admitted he never registered as a sex offender after his release from prison. His defense was that he was unaware he was required to register as a sex offender, and no one had advised him of that requirement.

Defendant was charged with the underlying sex offenses in 1990. The charging complaint included a paragraph advising defendant he would be required to register under section 290 if he were convicted. Defendant testified that he had not seen the complaint, and that no one read the registration advisement to him.

On December 4, 1990, defendant pleaded no contest in the Santa Barbara Superior Court to the two sex offenses. During voir dire, the prosecutor stated: "You will be required to register under Penal Code Section 290. Do you understand that?" Defendant replied: "Yes." Although defendant stipulated that this exchange had occurred, he nevertheless insisted no one had advised him of the registration requirement before he changed his plea. He claimed he remembered nothing that happened the day he pleaded no contest and did not remember if the judge told him he would have to register under section 290. He stated his attorney advised him to answer yes to all of the questions unless the attorney told him otherwise.

The court sentenced defendant to prison for the two sex offenses. On December 9, 1993, immediately before he was released on parole, defendant signed, dated, and affixed his fingerprint to a "Notice of Registration Requirement." That document stated: "I have been notified of my duty to register as a convicted sex offender pursuant to Section 290 of the California Penal Code. [¶] I understand that my responsibility to register as a sex offender is a lifetime requirement. [¶] I must register within 14 days of coming into any city, county or city and county in which I am domiciled

with a law enforcement agency having jurisdiction over my place of residence, and I must upon changing my residence inform in writing within ten days the law enforcement agency with which I last registered."

In addition, the prison official who gave defendant this notice also signed it under a certification which states: "I certify that I notified the individual described above of his or her duty to register."

Although defendant said he remembered meeting with a prison official and signing a number of documents before he was released, he testified he did not read the notice of registration requirement before he signed it. He also claimed no one read this document to him or explained his duty to register. Defendant explained that when he signed the notice, his counselor, Mr. Robles, handed him "many, many papers to sign," which he signed but did not have time to read.

After defendant was released from prison, the Immigration and Naturalization Service deported him to his native Mexico in February 1994. (Defendant testified he was born and grew up in Mexico, attended school there until the ninth grade, and moved to Santa Barbara in 1987 at the age of 21.) Defendant returned illegally to this country in April 1994 and lived with his sister in San Francisco until December 1994. At that point he went back to Mexico, stayed there a few months, again returned illegally to the United States, and ultimately moved to San Rafael in May 1995. Defendant admitted he never registered as a sex offender when he lived in San Francisco or San Rafael.

On September 14, 1995, a Mill Valley police officer stopped defendant for a minor traffic violation. Defendant could not produce a driver's license and gave the officer a false name and birth date. Ultimately, defendant admitted he did not have a valid driver's license and gave the officer his true name. The officer booked defendant for being an unlicensed driver and for giving false information to a police officer. At trial, defendant testified he gave the officer a false name because he did not want to be deported.

On December 15, 1995, a sexual assault investigator with the San Rafael Police Department contacted defendant at a yacht club in Tiburon, where defendant was working as a waiter. The officer wanted to determine defendant's correct address and to find out whether he was aware of the section 290 registration requirement. When the officer asked defendant if he was aware of his obligation to register, defendant said he "wasn't really sure" if he had been informed of the registration requirement. The officer explained the requirement to defendant, who made an appointment to register a few days later. Defendant said he had been living in San Rafael for about three weeks.

Defendant kept his appointment to register. After he registered, he was arrested for parole violations at his parole officer's request.

## II. THE REGISTRATION STATUTE

The registration requirement applicable to defendant was contained in section 290, former subdivision (a)(1), as amended in 1994. That provision, in pertinent part, provided that a sex offender is required "for the rest of his . . . life while residing in California . . . to register . . . within 14 days of coming into any county [or] city . . . in which he . . . temporarily resides or is domiciled for that length of time." (§ 290, former subd. (a)(1), as amended by Stats. 1994, ch. 867, § 2.7, p. 4389; see § 290, present subd. (a)(1)(A) [registration within five working days].) Persons subject to section 290 were required to inform the appropriate law enforcement agency of any change of "residence address" within 10 days. (§ 290, former subd. (f), as amended by Stats. 1994, ch. 867, § 2.7, p. 4392; see § 290, present subd. (f)(1) [notice within five working days].) The agency is required to forward changed address information to the Department of Justice, which in turn must forward it to the appropriate agencies in the new place of residence. (§ 290, former subd. (f), as amended by Stats. 1994, ch. 867, § 2.7, p. 4392; see § 290, present subd. (f)(1).)

When a person required to register is paroled, he must "be informed of his . . . duty to register under this section by the official in charge of the place of confinement . . . , and the official shall require the person to read and sign any form that may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to the person." (§ 290, former subd. (b), as amended by Stats. 1994, ch. 867, § 2.7, p. 4390; see § 290, present subd. (b)(1).) The official must give the person a copy of the form. (§ 290, former subd. (b), as amended by Stats. 1994, ch. 867, § 2.7, p. 4390; see § 290, present subd. (b)(2).) A person required to register because of a felony conviction who "willfully violates" the registration or notification provisions is guilty of a felony. (§ 290, former subd. (g)(3), as amended by Stats. 1994, ch. 867, § 2.7, p. 4393; see § 290, present subd. (g)(3).)

## III. THE JURY INSTRUCTIONS

The trial court instructed the jury that in order to find defendant guilty of willfully failing to register under section 290, subdivision (a)(1), it had to find: "One: [He] suffered a qualifying sex offense for which he was required by law to register . . . . [¶] Two: [He] resides in the state of California. [¶] Three: [He] willfully failed to register with the chief of police of the city in

which he temporarily resides or was domiciled, within 14 days of coming into that city. [¶] And, Four: That when [he] was paroled or released from the place where he was confined because of the commission of a sex offense which required registration, he was informed of his duty to register under Penal Code Section 290 by an official in charge of the place of confinement and the person read and signed the form required by the Department of Justice stating that the duty of [the] person to register under Penal Code Section 290 will be explained to him."

As noted, the court instructed the jury that to sustain a conviction under section 290, it had to find defendant *"willfully* failed to register . . . within 14 days of coming into [a] city." (Italics added.) The trial court used the standard instruction (based on the definition in § 7) to define "willfully." That instruction provides: "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness . . . to make the omission in question. The word 'willfully' does not require any intent to violate the law . . . ." (CALJIC No. 1.20.) In a related instruction, the court advised the jury that "When the evidence shows that the person voluntarily did that which the law declares to be a crime, it is no defense that he did not know that the act was unlawful or that he believed it to be lawful." (CALJIC No. 4.36.)

## IV. DISCUSSION

### A. *Actual Knowledge or Notice*

■ Defendant first contends the instructions failed to make it clear to the jury that a "willful" failure to register requires a finding that he *actually knew* about his duty to register. In defendant's view, the "ignorance of the law is no excuse" instruction (CALJIC No. 4.36) was misleading because it suggested the jury could convict defendant even if he had no actual knowledge of the registration requirement.

The Attorney General, on the other hand, argues that actual knowledge is not an element of the offense, and that it was sufficient to find that the appropriate officers *notified* defendant of his duty, as required by section 290. The Court of Appeal agreed with the Attorney General, concluding that the finding that the proper officers gave defendant *actual notice* of his registration obligations satisfied the registration statute and any applicable due process considerations. As the Court of Appeal stated, "it is the fact of actual notice—not actual or probable knowledge—which is required to show [defendant] has been convicted in accordance with due process. Here, the jury found [defendant] had actual notice and his conviction therefore comports with due process." Thus, the Court of Appeal believed that notice, not knowledge, is the critical element under the registration statute.

We agree with defendant. In a case like this, involving a *failure* to act, we believe section 290 requires the defendant to actually know of the duty to act. Both today and under the version applicable to defendant, a sex offender is guilty of a felony only if he "willfully violates" the registration or notification provisions of section 290. (§ 290, former subd. (g)(3), as amended by Stats. 1994, ch. 867, § 2.7, p. 4393; § 290, present subd. (g)(3).) The word "willfully" implies a "purpose or willingness" to make the omission. (§ 7.) Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. As stated in *People v. Honig* (1996) 48 Cal.App.4th 289, 334 [55 Cal.Rptr.2d 555], "the term 'willfully' . . . imports a requirement that 'the person knows what he is doing.' [Citation.] Consistent with that requirement, and in appropriate cases, knowledge has been held to be a concomitant of willfulness. [Fn. omitted.]" Accordingly, a violation of section 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement.

In *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297], we held that the crime of possession of an assault weapon does not require proof that the defendant actually knew of the characteristics of the weapon that made it an assault weapon; proof that the defendant knew or reasonably should have known was sufficient. (*Id.* at pp. 869-870.) In *People v. Simon* (1995) 9 Cal.4th 493, 522 [37 Cal.Rptr.2d 278, 886 P.2d 1271], we suggested that "willfulness" could include criminal negligence consisting of "failing to investigate and discover" the facts. (See also *People v. Brown* (1887) 74 Cal. 306, 310 [16 P. 1] [defendant's knowledge can be inferred from the fact he abstained from inquiry despite his suspicions].) In other contexts, we have explained that under the objective criminal negligence standard, we presume that defendants have knowledge if reasonable persons in their position would have appreciated the risks. (See *People v. Sargent* (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409], and cases cited.) But these cases generally involved affirmative acts, not a mere *failure* to act. In *In re Jorge M., supra,* 23 Cal.4th at pages 884-885, we also stressed the difficulty of proving the mental state of knowledge in that context. This case involves a legally imposed duty to act. Defendant's guilt here turns not on anything he did, but on what he did not do. Moreover, the registration statute establishes a method of providing notice of the registration requirement that can easily be documented, as it was in this case. (§ 290, subd. (b).) Although notice alone does not satisfy the willfulness requirement, a jury may infer from proof of notice that the defendant did have actual knowledge, which *would* satisfy the requirement.

The actual knowledge test satisfies constitutional requirements. The high court has held that due process principles forbid applying the proscriptions

of a registration act to one having "no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge." (*Lambert v. California* (1957) 355 U.S. 225, 227 [78 S.Ct. 240, 242, 2 L.Ed.2d 228] (*Lambert*).) As *Lambert* stated, "Registration laws are common and their range is wide. [Citations.] Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities. But the present ordinance is entirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. . . . [T]his appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent. She could but suffer the consequences of the ordinance, namely, conviction with the imposition of heavy criminal penalties thereunder. We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. . . . Where a person did not know of the duty to register, and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." (*Id.* at pp. 229-230 [78 S.Ct. at p. 243]; see *People v. Franklin* (1999) 20 Cal.4th 249, 253 [84 Cal.Rptr.2d 241, 975 P.2d 30].)

Assuming *Lambert* controls here (but see *U.S. v. Kafka* (9th Cir. 2000) 222 F.3d 1129, 1132-1133 [*Lambert* does not apply where the circumstances, including any notice expressly or impliedly provided by the criminal statute, should have alerted defendant to the registration requirement]; *U.S. v. Meade* (1st Cir. 1999) 175 F.3d 215, 226 [same]), it merely established that a defendant cannot be convicted of violating a registration act without at least "proof of the probability of" knowledge of the duty to register. (*Lambert, supra,* 355 U.S. at p. 229 [78 S.Ct. at p. 243].) By making actual knowledge of the duty to register an element of a section 290 violation, we undoubtedly meet any due process limitations imposed by *Lambert*.

The Attorney General also suggests that the trial court's instruction on "willfulness" adequately instructed the jury regarding the governing principles. We have observed that the meaning of the term "willfully" varies depending on the statutory context. (*People v. Hagen* (1998) 19 Cal.4th 652, 659, 663-666 [80 Cal.Rptr.2d 24, 967 P.2d 563] [adopting as a test for willful tax evasion "the voluntary, intentional violation of a known legal duty"].) In this case, the court instructed the jury (based on the definition in § 7) that "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness . . . to make the omission in question. The word 'willfully' does not require any intent to

violate the law . . . ." (CALJIC No. 1.20.) Thus this instruction correctly requires a showing of purpose or willingness to act, or (as in this case) fail to act. But, as we have explained, the instruction was incomplete in failing clearly to require actual knowledge of the registration requirement.

■ As we recently stated, "That the statute contains no reference to knowledge or other language of mens rea is not itself dispositive. . . . [T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it. 'Generally, " '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' . . .'" (*People* v. *Simon*[, *supra*,] 9 Cal.4th 493, 519 . . . , citations omitted.) In other words, there must be a union of act and wrongful intent, or criminal negligence. (Pen. Code, § 20; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850].) "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." (*People* v. *Vogel, supra,* at p. 801, fn. omitted.)' (*People v. Coria* (1999) 21 Cal.4th 868, 876 [89 Cal.Rptr.2d 650, 985 P.2d 970].)" (*In re Jorge M., supra,* 23 Cal.4th at p. 872.)

■ Accordingly, we conclude the court's instructions on "willfulness" should have required proof that, in addition to being formally notified by the appropriate officers as required by section 290, in order to willfully violate section 290 the defendant must actually know of his duty to register. We also conclude that the court erred in giving an "ignorance of the law is no excuse" instruction (CALJIC No. 4.36), which on its face would allow the jury to convict defendant of failing to register even if he were unaware of his obligation to do so. As *Lambert* observed, although the "no excuse" principle is "deep in our law, . . . due process places some limits on its exercise." (*Lambert, supra,* 355 U.S. at p. 228 [78 S.Ct. at p. 243]; see also *People v. Hagen, supra,* 19 Cal.4th at p. 660 [statutory "willfulness" requirement creates exception to common law presumption that ignorance or mistake of law is no excuse].) In the registration act context, the jury must find actual knowledge of the act's legal requirements.

B. *Prejudice*

■ Although the court did not clearly omit the actual knowledge requirement, its instructions were potentially misleading in this regard. Moreover, during closing argument, defense counsel started to argue that defendant was not aware of the registration requirement. The prosecutor objected

that the argument "misstates the law." The trial court stated, "Right. I have instructed the jury and you cannot change those instructions . . . ." Later, the prosecutor argued, without objection, that lack of knowledge was not a valid defense. Thus, on balance, the jury was erroneously led to believe that it did not have to find actual knowledge in order to find defendant guilty.

We conclude, however, that the error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; *People v. Hagen, supra*, 19 Cal.4th at p. 671; *People v. Flood* (1998) 18 Cal.4th 470, 502-503 [76 Cal.Rptr.2d 180, 957 P.2d 869]; cf. *Neder v. United States* (1999) 527 U.S. 1, 19 [119 S.Ct. 1827, 1838-1839, 144 L.Ed.2d 35].) At trial, the prosecution presented strong evidence that defendant knew of the registration requirements. The only evidence suggesting that defendant did not actually know of the requirement was defendant's testimony that nobody ever explained his duty to register to him and that he signed but did not read the notice that explained that duty. However, the trial court's instructions required the jury to find that defendant "was informed of his duty to register under Penal Code Section 290 by an official in charge of the place of confinement," and that he "*read* and signed the form required by the Department of Justice stating that the duty of [the] person to register under Penal Code Section 290 will be explained to him." (Italics added.) The verdict of guilt shows that the jury made these findings. Thus the jury found, contrary to defendant's testimony, that he *actually* read the form that stated, "I have been notified of my duty to register as a convicted sex offender pursuant to Section 290 of the California Penal Code," and that went on to specify exactly what that duty was. Under these properly given instructions, therefore, the jury's verdict necessarily shows that it discredited the only evidence supporting defendant's claim that he did not actually know about his duty to register. Given these findings, we conclude beyond a reasonable doubt that the same jury, properly instructed on the knowledge requirement, would also have concluded that he was aware of his duty to register.

## C. *Other Contentions*

Section 290, subdivision (b), requires an appropriate official (1) to inform a paroled offender of his duty to register, (2) to require the offender to read and sign a form confirming that the duty to register was explained to him, and (3) to give a copy of that form to the offender. Defendant now contends we should reverse his conviction under section 290 because the court's instructions failed to submit to the jury, and the record failed to show, whether the authorities gave him a *copy* of the form, required by subdivision (b), stating that the duty to register was explained to him. Defendant also

asserts the evidence fails affirmatively to show the authorities required him to *read* the foregoing form.

We find no statutory or other basis for reversing a judgment under section 290 on technical omissions of this kind. Defendant relies on *People v. Buford* (1974) 42 Cal.App.3d 975, 986-987 [117 Cal.Rptr. 333], but that case merely held that the defendant's failure to register could be excused by the authorities' complete failure to inform him of the registration requirement, or to secure his signature on the statutory form confirming that they explained his registration duty to him. We do not read *Buford* as requiring a reversal merely because the authorities failed to comply with some of the technical requirements of section 290, such as providing defendant with a copy of the prescribed form, so long as the evidence shows that he willfully and knowingly failed to register, as we have previously discussed.

### V.   SENTENCING ISSUE—DUAL USE OF PRIOR CONVICTION

As noted, defendant's registration obligation arose because he had suffered two earlier felony convictions under section 288, one of which the trial court struck before imposing sentence. The prescribed maximum punishment for failing to register as a convicted sex felon is three years. (§ 290, subd. (g)(2).) The trial court, however, relied on defendant's remaining prior conviction and the Three Strikes law, section 1170.12, subdivision (c)(1), to double defendant's punishment under section 290, imposing a term of six years.

■     Defendant argues that section 290 has already "factored in" the commission of a prior felony in setting the three-year maximum punishment, and that the trial court improperly relied on that prior felony in doubling his punishment under the Three Strikes law. He claims this "dual use" of his prior conviction violated the rule that "when a prior conviction constitutes an element of criminal conduct which otherwise would be noncriminal, the minimum sentence may not be increased because of the indispensable prior conviction. [Citations.]" (*People v. Edwards* (1976) 18 Cal.3d 796, 800 [135 Cal.Rptr. 411, 557 P.2d 995]; see also *In re Shull* (1944) 23 Cal.2d 745, 749-753 [146 P.2d 417].) Here, according to defendant, *Edwards* should bar using his prior felony conviction to increase his sentence because that prior conviction constituted an element of the section 290 registration offense: Failure to register with authorities is noncriminal conduct in the absence of a qualifying prior conviction.

■     Our first task, of course, is to ascertain the lawmakers' intent. As we recently stated, "As with any other statute, our task in construing a provision

of the Three Strikes law 'is to ascertain and effectuate legislative intent.' (*People* v. *Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) We consider first the statute's words because they are generally the most reliable indicator of legislative intent. (*Ibid.*; see also *Holloway* v. *United States* (1999) 526 U.S. [1, 6] [119 S.Ct. 966, 969, 143 L.Ed.2d 1].) 'When looking to the words of the statute, a court gives the language its usual, ordinary meaning.' (*People* v. *Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; accord, *Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)" (*People v. Nguyen* (1999) 21 Cal.4th 197, 203 [87 Cal.Rptr.2d 198, 980 P.2d 905] (*Nguyen*).)

On its face, the plain and unambiguous language of the Three Strikes law discloses an intent to impose the enhanced, doubled sentence despite a possible "dual use" of defendant's prior conviction. Section 1170.12, subdivision (c)(1), states that "If a defendant has one prior [serious or violent] felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." The section further provides that the doubled punishment shall apply "in addition to any other enhancements or punishment provisions which may apply." Finally, section 1170.12, subdivision (d)(1), provides: "*Notwithstanding any other provision of law*, this section shall be applied *in every case* in which a defendant has a prior felony conviction as defined in this section." (Italics added; see also § 667, subd. (f)(1).)

These provisions convinced the Court of Appeal in the present case that the framers of the Three Strikes law intended to impose the doubled punishment without regard to such preexisting decisions as *Edwards* and its "dual use" rule. The Court of Appeal itself relied in large part on *People v. Tillman* (1999) 73 Cal.App.4th 771, 774-786 [86 Cal.Rptr.2d 715]. As *Tillman* observed, the foregoing provisions "demonstrate a broad intent to have the Three Strikes law apply to all recidivists coming within its terms. This intent would be frustrated by allowing the *Edwards* rule to limit the prior convictions that could be used to trigger application of the Three Strikes law." (*Id.* at p. 782; see also *People v. Murphy* (2001) 25 Cal.4th 136, 156-157 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

Despite the apparent clarity of the language on which *Tillman, supra*, 73 Cal.App.4th 771, relied, defendant argues that *Tillman* was incorrect in holding that section 1170.12, subdivision (c)(1), properly may be used to double the punishment for a failure to register merely because the defendant had suffered an earlier qualifying ("violent" or "serious") felony that also led

to his duty to register. Defendant states that when he violated the provision in 1995, "virtually all" sex offense felonies listed in section 290, subdivision (a)(2)(A), as requiring registration were also violent or serious felonies under the Three Strikes law. (See §§ 1170.12, subd. (b)(1), 667.5, subd. (c) [violent felonies, including "(6) lewd acts on a child under the age of 14 years as defined in Section 288"], 1192.7, subd. (c) [serious felonies, including "(6) lewd or lascivious act on a child under the age of 14 years"].) He further argues that in light of this overlap, application of the Three Strikes law to violations of section 290 would result in an automatic doubling of the sentences prescribed by that section, a result unintended by the framers of the Three Strike law.

In other words, defendant asserts that the problem with *Tillman*'s holding as applied to failures to register is that most, if not all, such failures would result in an automatic doubling of the prescribed punishment, because they would involve an underlying serious or violent sex offense felony. Defendant observes that automatically doubling the three-year term for violating what we have recently characterized as a "regulatory" enactment (*People v. Castellanos* (1999) 21 Cal.4th 785, 798 [88 Cal.Rptr.2d 346, 982 P.2d 211]) is unduly harsh and exceeds the expressed intent of the Three Strikes law to punish recidivist felony offenders. (See *People v. Jones* (1993) 5 Cal.4th 1142, 1150 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; cf. *People v. Baird* (1995) 12 Cal.4th 126, 134 [48 Cal.Rptr.2d 65, 906 P.2d 1220].)

Contrary to defendant's assumption, in testing his "automatic doubling" argument we must look at the list of registrable offenses in effect in 1994 when the Three Strikes law was passed in order to determine whether the framers intended persons convicted of felony violations of section 290 to be subject to the doubled punishment provision. Examined in that light, defendant's characterization is clearly overbroad, as many sex offenses registrable in 1994 would not also constitute Three Strikes offenses (which generally must involve force, violence, duress, menace, or threats, or lewd or lascivious acts on a child under 14). Without attempting to compile a complete list, examples of such registrable offenses would include various pimping and pandering offenses (see §§ 266, 266h-266j, 267), contributing to a minor's delinquency (§ 272), incest (§ 285), nonforcible sodomy (§ 286, subds. (e)-(k)), sex offenses based solely on the age of the child victim (§§ 286, subd. (b), 288.2, 288a, subd. (b), 289, subds. (h), (i)), various obscenity offenses (§ 311 et seq.), indecent exposure (§ 314), loitering (§ 647, subd. (d)), and child annoyance (§ 647.6). In short, and contrary to defendant's assumption, application of section 1170.12, subdivision (c)(1), to section 290 would not result in the automatic doubling of all felony sentences under that provision.

Defendant next argues that the language of the Three Strikes law is reasonably susceptible to a construction favorable to him. (See *People v.*

*Franklin, supra,* 20 Cal.4th at p. 253.) Section 1170.12, subdivision(c)(1), states that a person with a prior qualifying felony, or strike, must receive a prison term that is twice "the term *otherwise provided* as punishment" for his new offense. (Italics added.) Defendant argues that the statutory language could be read as requiring a doubling of the term otherwise provided for the current felony offense *as if defendant had no prior strike conviction* on his record. But if defendant had no prior conviction, he would not have been required by section 290 to register in the first place, and would have no "otherwise provided" punishment to double. In other words, according to defendant, section 290 has already factored in the commission of a prior felony in setting the three-year maximum punishment for a failure to register.

Once again, we disagree. We have recently construed the "otherwise provided" language of section 1170.12, subdivision (c)(1), as referring to "the term that would be imposed in the absence of the Three Strikes law." (*Nguyen, supra*, 21 Cal.4th at p. 205.) In light of the numerous registrable offenses not falling within the Three Strikes law, as previously discussed, the *Nguyen* definition readily fits the facts of this case: Defendant, having suffered a prior qualifying strike, must receive a term for violating section 290 that is twice the term that would have been imposed had he committed one of the many prior nonqualifying offenses. (See also *People v. Murphy, supra*, 25 Cal.4th at pp. 158-159.)

In short, we find nothing in the language of the Three Strikes law or the cases construing it indicating the framers intended to exempt from section 1170.12, subdivision (c)(1), a felony violation of the sex registration laws.

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I agree with the majority that a conviction of the crime of willful failure to register as a sex offender (Pen. Code, § 290)[1] requires proof that the defendant had actual knowledge of the registration requirement. I disagree, however, with the majority's conclusion that here the trial court's failure to instruct the jury on the element of knowledge was harmless.

I

In 1990, defendant entered a no contest plea to two crimes requiring registration as a convicted sex offender. At that time the prosecutor told

---

[1] All further statutory references are to the Penal Code.

defendant, "You will be required to register under Penal Code Section 290," but he did not explain what such registration entailed. Defendant was sentenced to prison.

Upon defendant's release on parole in 1993, he signed a form acknowledging that he had been told of his duty to register "with a law enforcement agency" and to do so "within 14 days of coming into any city, county or city and county in which [he was] domiciled." He was immediately deported to Mexico, but he later returned illegally to California. In September 1995, defendant was driving a car when a police officer stopped him for a minor traffic violation. Defendant had no driver's license and gave a false name to the officer.

In December 1995, a police investigator talked to defendant at his place of employment and asked if he knew he had to register as a sex offender. Defendant replied he "wasn't really sure" he had been told to do so. He then made an appointment to register at the police station. When he arrived there, the police promptly arrested him for failure to register as a sex offender. His two prior convictions were alleged as strikes under the three strikes law.

At trial, defendant asserted he did not know of the registration requirement. He said that he had not been told of that registration requirement when he pled no contest to the two sex offenses, that he did not read the documents he signed when released on parole, and that fear of deportation led him to give a false name when stopped for the traffic violation.

In closing argument, defense counsel tried to argue to the jury that defendant did not know of his duty to register, and therefore his failure to do so was not "willful" under section 290: "[T]his has got to be the willful failure to register. There's got to be an omission with purpose or willingness to make the omission in question. [¶] And what I suggest to you in this case is there was no willingness, no purpose or willingness to omit or make the omission in question *because [defendant] was not aware of the requirement.*" (Italics added.) The prosecutor objected, asserting, "That misstates the law." The trial court sustained the objection, stating: "Right. I have instructed the jury and you cannot change those instructions . . . ." Thereafter, the prosecutor in his own closing argument stressed to the jury that lack of knowledge of the duty to register as a sex offender was not a valid defense.

## II

A trial court's failure to instruct the jury on an element of the crime requires reversal when "the defendant contested the omitted element and

raised evidence sufficient to support a contrary finding . . . ." (*Neder v. United States* (1999) 527 U.S. 1, 19 [119 S.Ct. 1827, 1838, 144 L.Ed.2d 35] (*Neder*).) The high court in *Neder* also pointed out that the error is not prejudicial when on appeal it is clear "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence . . . ." (*Id.* at p. 17 [119 S.Ct. at p. 1837].) In addition, this court has held that such error is harmless when the reviewing court can determine beyond a reasonable doubt, based on jury findings that may be inferred from other instructions, that the instructional error did not contribute to the verdict. (*People v. Hagen* (1999) 19 Cal.4th 652, 670-671 [80 Cal.Rptr.2d 24, 967 P.2d 563].)

Here, the trial court's jury instructions did not omit an element of the offense charged. The instructions were potentially misleading, however, because they did not clarify that the element of willful failure to register as a sex offender could be satisfied only if the jury found that defendant knew of his duty to register. If the court had done no more, its failure to clarify for the jury the meaning of the word "willful" might have been harmless. But when, in closing argument, defense counsel tried to argue that defendant should be acquitted because he did not know he had to register as a convicted sex offender, the court erroneously told the jury the argument misstated the law. The court characterized defense counsel's argument as an attempt to "change" the court's instructions to the jury. The court's actions effectively removed the element of knowledge from the jury's consideration. Consequently, the error must be evaluated under the test articulated at the outset of this section.

Defendant testified he did not know of the registration requirement. Certain conduct by defendant tends to support that claim. When—in the wake of a traffic stop during which defendant could not produce a driver's license and, fearing deportation, gave the officer a false name—a police investigator told defendant of his duty to register as a sex offender, defendant promptly tried to do so at the nearest police station, where he was immediately arrested for failure to register. Through his testimony, defendant contested the omitted element of knowledge. Because his testimony was plausible, it would have been sufficient to support a jury finding that the prosecution had failed to prove that element.

The majority insists, however, that the error did not contribute to the verdict. It points to an instruction telling the jury here that to convict defendant of failure to register as a sex offender, it must find that he "was informed of his duty to register under Penal Code section 290 by an official in charge of the place of confinement" and that he "read and signed a form

. . . stating that the duty of [defendant] to register under Penal Code section 290 had been explained to him." The majority concludes that in light of this instruction, the jury's verdict convicting defendant implies a finding that defendant read the form. According to the majority, this finding establishes beyond a reasonable doubt that "the same jury, properly instructed on the knowledge requirement, would also have concluded that [defendant] was aware of his duty to register." (Maj. opn., *ante*, at p. 755.) Not so. The jury might well have concluded that defendant, who testified he was given "many, many papers to sign," skimmed through the form before signing it but did not grasp its import and therefore did not realize he had to register as a sex offender when, after deportation to Mexico, he illegally returned to California.

Had the trial court instructed on the knowledge element, the jury might well have found that defendant knew of his duty to register. But, based on defendant's testimony, it could just as reasonably have reached a contrary finding. When, as here, a defendant has "contested the omitted element and raised evidence sufficient to support a contrary finding" (*Neder, supra,* 527 U.S. at p. 19 [119 S.Ct. at p. 1839]), the trial court's failure to instruct the jury on the element in question requires reversal. (*Ibid.*)

For the reasons given above, I would reverse the Court of Appeal's judgment affirming defendant's conviction.

Mosk, J., concurred.

Appellant's petition for a rehearing was denied July 18, 2001, and the opinion was modified to read as printed above.