Filed 5/13/21  P. v. Bell CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BELL,<br><br>    Defendant and Appellant. | D076805<br><br><br><br>(Super. Ct. No. SCD282653) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette C. Cavalier and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Michael Bell appeals from a judgment of conviction after a jury found him guilty of one count of escape while confined for a felony (Pen. Code, §4532, subd. (b)(1)).  The trial court sentenced Bell to probation for a separate crime, and, as part of his probation, Bell was to serve 240 days in custody at a reentry facility and participate in a work furlough program.  The same day that Bell arrived at the reentry facility where he was to complete the work furlough portion of his sentence, he was granted permission to leave to go to the hospital for medical treatment.  Bell did not return, and after three days of being absent from the facility, he was discovered at a port of entry attempting to re-enter the United States from Mexico.  Bell was charged with and tried on one count of escape while confined for a felony.

Bell asserts that the trial court erred in instructing the jury with respect to the offense.  Bell contends that even though the offense of escape while confined for a felony is a general intent crime, a defendant must have actually known of the requirement that he return to the place of confinement and have intentionally failed to return, in order to be convicted of the offense. Bell contends that the trial court should have instructed the jury with respect to this knowledge requirement by giving three related instructions that the defense requested.  Specifically, Bell argues that the trial court should have instructed the jury with a modified version of CALCRIM No. 2760, which is the instruction regarding the substantive elements of the offense of escape while confined for a felony, so that it would have included as an element of the offense that the People had to prove that the defendant had actual knowledge that he was required to return to the place of confinement.  Bell also argues that the trial court should have given CALCRIM No. 225, which

describes the use of circumstantial evidence to establish intent or mental state, rather than CALCRIM No. 224, regarding the use of circumstantial evidence generally, and that the court also should have given CALCRIM No. 251, which addresses the specific intent or mental state necessary to commit the charged offense, rather than CALCRIM No. 250, the general intent instruction.

Even if we presume that Bell is correct in his assertion that the trial court's instructions were erroneous and that the court should have instructed the jury that Bell had to have actually known that he was required to return to the reentry facility, such presumed error was harmless beyond a reasonable doubt given the evidence presented at trial.

After briefing on Bell's appeal was complete, we granted Bell leave to file a supplemental brief in which he argued that he is entitled to the ameliorative effect of an amendment to Penal Code section 1203.1, subdivision (a), which became effective January 1, 2021. Specifically, Bell contends that he is entitled to seek a reduction of his three-year probation term under recently enacted Assembly Bill No. 1950 (Stats. 2020, ch. 328, § 2). Effective January 1, 2021, Assembly Bill No. 1950 amended section 1203.1 to limit the maximum probation term that a trial court is authorized to impose for most felony offenses to two years. Bell asserts that Assembly Bill No. 1950's limitation on the maximum duration of felony probation constitutes an ameliorative change to the criminal law that applies retroactively to cases that were not reduced to final judgment as of the effective date of the new law. We agree.

We therefore affirm the judgment with respect to Bell's conviction. However, we reverse the probation order and remand the matter for the trial

3

court to enter a new probation order consistent with Assembly Bill No. 1950 and this opinion.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Factual background*

Bell was convicted of a felony, granted formal probation, and ordered to serve 240 days of custody in a "reentry facility" for a "work furlough program." After law enforcement officers transported Bell from jail to the facility, program staff assigned him a room and a bed, and issued him an identification badge. Bell signed a check-in sheet and indicated the date and time that he arrived at the facility. Later that evening, Bell requested that an ambulance be summoned to transport him to the hospital due to a medical issue, and an ambulance was called.

Bell was granted the usual four hours for his medical visit. A staff member at the reentry facility advised Bell of the rules regarding his hospital visit, which included requirements that he call the facility when he arrived at the hospital, that he call the facility each hour, and that he return with the discharge paperwork from the hospital. Before Bell left the facility, Bell signed his check-out sheet, which indicated where he was going and also indicated that he was expected to return by 4:00 a.m. Staff also verbally informed Bell that he was expected to return by 4:00 a.m., and told him that he could be granted an extension of time if he requested one.

Bell did not call when he arrived at the hospital. At 7:00 a.m. the following day, when Bell had not yet returned, a supervisor at the reentry facility began to investigate Bell's whereabouts. She learned that he had been admitted to the hospital at 11:48 p.m. the previous night, and that he had been discharged from the hospital a few hours later, at 2:52 a.m. The

4

supervisor searched for the bus routes from the hospital to the facility and determined that Bell should have arrived back at the facility at around 7:00 a.m.[1] The supervisor waited until approximately 8:45 or 9:00 a.m. to "deem it an escape," at which point she called the San Diego Police to report that Bell had escaped from the facility.

On July 29, 2019, three days after he left the reentry facility to receive medical treatment, Bell presented himself at the San Ysidro port of entry attempting to gain entry into the United States. Bell possessed no identification documents, but he provided his name and date of birth to the border patrol agent. An agent looked up Bell's information on the computer and another took his fingerprints; the agents discovered that Bell had an outstanding warrant and sent him to secondary inspection.

## B. *Procedural background*

In August 2019, the People charged Bell with one count of escape while confined for a felony (Pen. Code, § 4532, subd. (b)(1)). Bell was tried, and a jury found him guilty of the charged offense. On November 6, 2019, the trial court sentenced Bell to three years of formal probation.

Bell filed a timely notice of appeal.

### III.

### DISCUSSION

## A. *Bell has not demonstrated reversible error with respect to his conviction*

Bell contends that the trial court committed three related instructional errors. The thrust of Bell's argument is that the trial court failed to recognize that the general intent offense with which Bell was charged—escape while confined for a felony—also requires that the prosecution prove that Bell actually knew that he was legally obligated to return to the reentry facility

---

[1] Bell had been provided a bus pass for his return trip to the facility.

after he was authorized to leave the facility to go to the hospital. Specifically, Bell asserts that the trial court erred in failing to instruct the jury with (1) Bell's proposed modified version of CALCRIM No. 2760, the instruction regarding the substantive elements of the offense, in which he included an additional element not in the form instruction, i.e., that the People prove that the defendant had actual knowledge that he was required to return to the place of confinement; (2) CALCRIM No. 225, regarding the use of circumstantial evidence to establish intent or mental state, rather than CALCRIM No. 224, regarding the use of circumstantial evidence generally; and (3) CALCRIM No. 251, regarding the specific intent or mental state necessary to commit the charged offense, rather than CALCRIM No. 250, the general intent instruction.

1. *Additional background*

In a written motion, defense counsel asked the trial court to instruct the jury with a modified version of CALCRIM No. 2760, the instruction that corresponds with the offense of escape as defined in Penal Code section 4532, as adapted for use with respect to the specific offense with which Bell was charged—i.e., escape while confined for a felony. Defense counsel's proposed instruction was as follows:

> "The defendant is charged in Count 1 with escape in violation of Penal Code section 4532. To prove that the defendant is guilty of this crime, the People must prove that:

> "1. The defendant was a prisoner who had been booked for a felony;

> "2. The defendant was confined in a county jail but was authorized to be away from the place of confinement in connection with a work furlough program;

6

"3. The defendant escaped from the jail by failing to return to the place of confinement;

"AND

"4. The defendant had actual knowledge of his requirement to return to the place of confinement.

"A person has been *booked* for a felony if he has been taken to a law enforcement office where an officer or employee has recorded the arrest and taken the person's fingerprints and photograph.

"*Escape* means that a prisoner has willfully failed to return to his place of confinement within the period that he was authorized to be away from that place of confinement. Someone commits an[ ] act willfully if he does it willingly or on purpose with the knowledge that they are required to return within a specified time."

The fourth element in Bell's requested instruction, i.e., that the defendant "had actual knowledge of his requirement to return to the place of confinement," as well as the language in the definition of "escape" that the individual do the act "with the knowledge that they are required to return within a specified time," are not included in CALCRIM No. 2760's form instruction.

During an on-the-record discussion regarding jury instructions, defense counsel also requested that the trial court instruct the jury with CALCRIM No. 225, rather than CALCRIM No. 224. CALCRIM No. 224 provides:

"Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

7

"Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

In contrast, CALCRIM No. 225 provides:

"The People must prove not only that the defendant did the act[s] charged, but also that (he/she) acted with a particular (intent/ [and/or] mental state). The instruction for (the/each) crime [and allegation] explains the (intent/ [and/or] mental state) required.

"A[n] (intent/ [and/or] mental state) may be proved by circumstantial evidence.

"Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to conclude that the defendant had the required (intent/ [and/or] mental state), you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required (intent/ [and/or] mental state). If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required (intent/ [and/or] mental state) and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required (intent/ [and/or] mental state) was not proved

by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

In response to defense counsel's requests, the trial court said, "[CALCRIM No.] 225 is normally for a specific intent crime. I guess this goes to your idea that this is really not a general intent crime. It's a general intent crime with a mental element." Defense counsel responded, "That's correct." The court stated, "It's sort of a confusing area of the law[,]" and noted the example of the crime of receiving stolen property, which is a general intent crime that includes the "mental element that you have knowledge that the property was stolen." In response, the prosecutor argued that defense counsel was "making this a specific intent crime, and there's ample case law that says [Penal Code section] 4532 is not [a] specific intent [offense]."

The trial court ruled that it would instruct with CALCRIM No. 224, stating, "I believe this is a general intent crime, and it's the better instruction to give."

Later during the jury instruction discussion, defense counsel requested that the court instruct the jury with CALCRIM No. 251, as opposed to instructing with CALCRIM No. 250. CALCRIM No. 250 provides:

> "The crime[s] [or other allegation[s]] charged in this case require[s] proof of the union, or joint operation, of act and wrongful intent.
>
> "For you to find a person guilty of the crime[s] (in this case/ of <insert name[s] of alleged offense[s] and count[s], e.g., battery, as charged in Count 1> [or to find the allegation[s] of <insert name[s] of enhancement[s]> true]), that person must not only commit the prohibited act [or fail to do the required act], but must do so with wrongful intent. A

9

person acts with wrongful intent when he or she intentionally does a prohibited act [or fails to do a required act]; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime [or allegation]."

CALCRIM No. 251 provides in relevant part:

"The crime[s] [(and/or) other allegation[s]] charged in this case require[s] proof of the union, or joint operation, of act and wrongful intent.

"For you to find a person guilty of the crime[s] (in this case/ of <insert name[s] of alleged offense[s] and count[s], e.g., burglary, as charged in Count 1> [or to find the allegation[s] of <insert name[s] of enhancement[s]> true]), that person must not only intentionally commit the prohibited act [or intentionally fail to do the required act], but must do so with a specific (intent/ [and/or] mental state). The act and the specific (intent/ [and/or] mental state) required are explained in the instruction for that crime [or allegation]."

Defense counsel argued that a "mental state is required for this crime." The trial court denied defense counsel's request and ruled that it would give CALCRIM No. 250, although the court expressed some confusion as to whether the offense of escape while confined for a felony requires actual knowledge of the requirement to return to the facility where the defendant was confined.

During the discussion among the attorneys and the court regarding jury instructions pertaining to the elements of the offense, defense counsel requested that the trial court add the element that "[t]he defendant had actual knowledge of his requirement to return to the place of confinement." The trial court indicated that it was "inclined not to give it because I think it's covered clearly by other instructions, mainly the intent instruction." In

10

response, defense counsel cited cases in which courts imposed a knowledge element in a general intent crime where the defendant's mental state was at issue. The trial court indicated that it wanted some time to read the cases that defense counsel cited, and indicated that the court would make a final determination the following day.

When court reconvened the following day, the trial court indicated that it did not intend to give instructions that included an actual knowledge element as requested by defense counsel because its review of the cases demonstrated that escape, as a rule, is a general intent crime. In response, defense counsel contended that the cases established that where the defense argues "the knowledge element," the trial court must instruct on knowledge even if the offense is a general intent crime. Defense counsel stated, "There's no dispute that escape is a general intent crime. But here there's an issue about whether or not Mr. Bell knew that he had to return to work furlough. And because there is this knowledge issue related to general intent, the Court's required to instruct on it." The trial court inquired as to what evidence supported the theory that Bell did not know that he was supposed to return to the reentry facility. The trial court stated, "[P]eople told him he had to come back. Common sense tells you[,] you have to come back. He hasn't testified that he didn't know he was supposed to come back."

In support of the defense theory, defense counsel offered, "[H]e was advised during the middle of an emergency while he was having bloody discharge from his penis. And he was wait – there was an ambulance waiting outside. And the advisal was two minutes long." Defense counsel claimed "all of that lends itself to a common sense conclusion that a person might not [*sic*] be confused." According to defense counsel, "[T]his [is] a case where normally [the instruction regarding actual knowledge] would be required,"

11

and also "there [is] substantial evidence" for the defense to present the theory.

The trial court denied the defense requests to provide any instructions to the effect that Bell had to actually know that he was required to return to the place of his confinement, stating, "I don't think there's substantial evidence to give it. So it's not going to be given over your objection." With respect to the substantive offense of escape while confined, the court instructed the jury as follows:

> "The defendant is charged in Count One with Escape in violation of Penal Code section 4532.
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1. The defendant was a prisoner who had been convicted of a felony;
>
> "2. The defendant was confined in a county jail but was authorized to be away from the place of confinement in connection with a work furlough program;
>
> "3. The defendant escaped from the jail by failing to return to the place of confinement.
>
> "A prisoner *escapes* if he or she willfully fails to return to his or her place of confinement within the period that he or she was authorized to be away from that place of confinement. Someone commits an act *willfully* when he or she does it willingly or on purpose."

2. *Legal standards*

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.]" (*People v. Souza* (2012) 54 Cal.4th 90, 115–116.) " ' "The general principles of law governing the case

12

are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) "The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).)

Failure to instruct as to all of the elements of an offense is a "serious constitutional error because it threatens the right to a jury trial" guaranteed by both the state and federal constitutions. (*Merritt, supra*, 2 Cal.5th at p. 824.) However, as long as the error "does not vitiate all of the jury's findings"(italics omitted), the omission of even multiple elements of the offense from the trial court's charge is subject to a harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Merritt*, at p. 829.) Pursuant to that standard of harmless error analysis, we consider whether "it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*Id.* at p. 831.)

   3. *Bell cannot establish prejudice*

As we explain below, we conclude that even if we presume, as Bell argues, that he was entitled to an instruction that he had to have had actual knowledge of the requirement that he return to his place of confinement, and that the court's decision not to provide the requested instructions was error, Bell is nevertheless not entitled to reversal because any such presumed error was harmless beyond a reasonable doubt under the *Chapman* standard of prejudice review.

In assessing whether an error in omitting an element of an offense from a jury instruction was harmless beyond a reasonable doubt, " '[a] court . . . asks whether the record contains evidence that could rationally lead to a

13

contrary finding with respect to the omitted element." (*Merritt, supra*, 2 Cal.5th at p. 832.) In conducting this review, the court looks to the " 'whole record' " to evaluate the claimed error's effect on the jury's verdict. (*Rose v. Clark* (1986) 478 U.S. 570, 583.) The harmless error inquiry for the erroneous omission of an instruction regarding one or more elements of an offense focuses primarily on the weight of the evidence adduced at trial. (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

After review of the record and the evidence adduced at trial, we are convinced that even if the jury had been instructed precisely as Bell contends it should have been—i.e., with his modified CALCRIM No. 2760 instruction, CALCRIM 225, and CALCRIM 251, thereby including a knowledge element in the elements of the offense—the jury would have concluded that Bell had knowledge of his duty to return to the facility upon his release from the hospital, based on abundant circumstantial evidence that Bell was aware that he was required to return.

With respect to the original offense of which Bell was convicted, the trial court sentenced him to three years of formal probation with 240 days of custody. The court permitted Bell to serve the custodial portion of his sentence in a residential reentry center. During the sentencing proceeding, the trial court informed Bell that it was granting him formal probation, that he was ordered to serve 240 days in custody, that he could serve that custodial period in a work furlough program, and that it was a "*custodial* sanction." (Italics added.) Bell agreed to these terms.

Bell was transported directly from the jail to the reentry facility by a probation officer. When he arrived at the facility, the staff checked him in and issued him a room, a bed, and an identification badge that he was informed he was required to keep with him *at all times*. Bell met with at

least two different staff members at the facility who reviewed the rules of the facility with him. Before he left for the hospital, he was specifically told that he was required to call the facility upon his arrival at the hospital, and that he had to call each hour thereafter, and also just before leaving the hospital. One staff member also testified that she told Bell that he was required to return to the facility by 4:00 a.m., and that if he were unable to meet this timeline, he had to call to request an extension of his authorization to be away from the facility. Another staff member testified that she told Bell that he had to return to the facility with the discharge paperwork from the hospital. Videos of these interactions, which did not include audio, were shown to the jury. In the videos, Bell was wearing his facility badge, demonstrating that he was aware of the rule requiring that he wear the badge at all times. Bell also signed the check-in-and-out sheet, as required.

Bell did not call 911 himself or try to walk out the front door of the facility to seek medical treatment. Instead, he requested permission to leave the facility, asked a staff member to call 911, and completed and signed the paperwork required for him to be permitted to leave. In addition, Bell's hospital discharge paperwork demonstrated that he provided the reentry facility's address and telephone number to the hospital emergency department as his own address and phone number. This evidence, although circumstantial, overwhelmingly demonstrates that Bell was aware of the custodial nature of the residential reentry facility and the requirement that he return to the facility after his discharge from the hospital.

Further, there was no evidence to support Bell's theory at trial that he was not aware of the requirement. Bell did not testify. The defense called one witness—Bell's case manager at the facility, to testify. She stated that, at one point, Bell seemed "confused" while she "went over general rules of the

15

facility with him." However, the case manager clarified on cross-examination that she had heard the probation officer who transported Bell to the facility tell him that he would now be living at the facility,[2] and that the case manager "helped him understand" that he would be living there and would be assigned a dorm room. She also confirmed that she "gave [Bell] a general overview . . . if he were to ever leave the facility . . . he needed to call us and/or be in contact with us and return at a specific time." She also believed that Bell attended a facility "orientation" later that day. The case manager's testimony does not support a reasonable inference that Bell did not know that he was required to return to the facility.

The circumstantial evidence that Bell knew that he was not free to come and go from the facility and that he was required to return to the work furlough facility as soon as his hospital visit was complete was overwhelming. (See *People v. Garcia* (2001) 25 Cal.4th 744, 752 [jury can infer from proof of notice that defendant possessed actual knowledge of a duty to register as a sex offender].) At every step in the process, Bell was informed of the fact that he would be in custody while at the facility; further, his own conduct throughout the process demonstrated that he understood that he was required to be at the facility absent special authorization to leave. Staff members of the reentry facility testified that they specifically told Bell that he had to return to the facility upon his release from the hospital. We are therefore convinced beyond a reasonable doubt that even if the jury had been instructed that Bell had to actually know of the requirement that he return to the facility after his discharge from the hospital, the jury would have concluded that Bell did know that he was required to return. (See *People v.*

---

[2]     That Bell understood this is supported by Bell's giving the facility's address as his own on his hospital paperwork.

16

*Garcia, supra*, at p. 755 [concluding that failure to instruct on requirement that the defendant actually know that he had a duty to register as a sex offender was harmless beyond a reasonable doubt where there was "strong" circumstantial evidence that the defendant knew of the registration requirement].)

B. *Bell is entitled to retroactive application of the recent amendment to Penal Code section 1203.1, subdivision (a)*

At the time Bell was sentenced, section 1203.1, subdivision (a) provided that a court may impose felony probation "for a period of time not exceeding the maximum possible term of the sentence." It further provided that "where the maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years." (Former § 1203.1, subd. (a).) During the pendency of this appeal, the Legislature enacted Assembly Bill No. 1950, which amended section 1203.1. (Stats. 2020, ch. 328, § 2.) Subject to exceptions not applicable here, section 1203.1, subdivision (a), as amended, provides that a felony probation term may not exceed two years.

Bell contends that Assembly Bill No. 1950's two-year limitation for felony probation terms applies retroactively to cases like his own that were not final when the new law became effective on January 1, 2021 under the rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). The People disagree with Bell that the rule of applies retroactively to cases involving legislative reductions to probation terms because, the People argue, "[p]robation is an act of clemency in lieu of punishment, primarily aimed at rehabilitation." However, the People concede that multiple recent published decisions have

17

concluded that Assembly Bill No. 1950 applies retroactively in nonfinal cases. (See *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1071–1074; *People v. Sims* (2021) 59 Cal.App.5th 943, 964 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 883; *People v. Burton* (2020) 58 Cal.App.5th.Supp. 1, 19.)

We agree with this court's recent opinion in *Sims, supra*, 59 Cal.App.5th at pages 959–964, that Assembly Bill No. 1950's two-year felony probation limitation applies retroactively. We reject the People's position that ameliorative legislation regarding the length of probation is not subject to the *Estrada* rule; although " 'probation is not technically a "punishment," being " 'rehabilitative in nature' " [citation], there is no question it is a sanction that imposes significant restrictions on the civil liberties of a defendant.' [Citations.] By limiting the maximum duration a probationer can be subject to such restraint, Assembly Bill No. 1950 has a direct and significant ameliorative benefit for at least some probationers who otherwise would be subject to additional months or years of potentially onerous and intrusive probation conditions." (*Sims*, at p. 959.) As the *Sims* court concluded: "[T]he two-year limitation on felony probation set forth in Assembly Bill No. 1950 is an ameliorative change to the criminal law that is subject to the *Estrada* presumption of retroactivity. The Legislature did not include a savings clause or other clear indication that the two-year limitation applies on a prospective-only basis. Therefore, . . . the two-year limitation applies retroactively to all cases not reduced to final judgment as of the new law's effective date." (*Id*. at p. 964.) We further conclude that remand is appropriate to allow Bell to seek a reduced probation term under Assembly Bill No. 1950. (See *Sims*, at p. 964.)

18

IV.

DISPOSITION

The order of probation is reversed and the matter remanded for the court to issue a new order of probation consistent with Assembly Bill No. 1950 and this opinion.  In all other respects the judgment is affirmed.


AARON, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

19