Filed 7/28/23  P. v. Davidson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B320012 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA103043) |
| v. | |
| SEAN ALLEN DAVIDSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector Guzman, Judge.  Reversed in part.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and David E.

Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Sean Allen Davidson, a registered sex offender, was convicted of failing to report a new residence under Penal Code[1] section 290, subdivision (b), and failing to report to the last registering agency a change from one residence to another under section 290.013.  The trial court suspended imposition of sentence and placed appellant on formal probation, with the condition he serve a 90-day jail term.

Appellant raises nine issues, contending: (1) insufficient evidence supports his conviction under either section 290 (count one) or section 290.013 (count two); (2) the statutory definitions of "residence" or "resides" are impermissibly vague; (3) the trial court erred in denying his midtrial request for a mistrial or continuance; (4) the trial court erred in allowing the prosecutor to cross-examine a defense witness on her knowledge of appellant's 2013 conviction; (5) the court erred in allowing Officer Stephen Ott to offer legal opinions regarding the requirements of section 290; (6) the trial court erroneously admitted various lines of testimony given by Detective Ryan Harrison that were tantamount to his opinion that appellant was guilty of

_____

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

the offenses; (7) the court improperly instructed the jury with CALCRIM No. 333, an instruction on lay opinion testimony; (8) the prosecutor committed misconduct during the presentation of evidence and closing argument; and (9) a series of errors, even if independently harmless, accumulated in such a manner as to deprive him of his right to a fair trial.

We conclude the evidence does not support appellant's conviction under count two, section 290.013 (a). The plain language of that statute does not apply to a defendant who, like appellant, is registered as transient and then moves into a residence. Accordingly, we order that count dismissed. Discerning no cognizable or reversible error in the remaining claims, many of which have been forfeited, we otherwise affirm the judgment.

**SEX OFFENDER REGISTRATION REQUIREMENTS**

The Sex Offender Registration Act (§ 290 et seq.; hereafter, the Registration Act) requires individuals convicted of certain offenses to register as sex offenders.[2] (§ 290.) Subdivision (c) of section 290 includes any person

---

[2] Section 290, subdivision (b) states: "Every person described in subdivision (c) . . . while residing in California, … shall register with the chief of police of the city in which the person is residing . . . and, additionally . . . within five working days of coming into, or changing his or her residence within, any … city … in which he or she temporarily resides, and shall be required to register thereafter in accordance with the Act."

convicted of lewd conduct on a child under section 288 (or former § 288(a)). (§ 290, subd. (c).)

All sex offenders, including those who have a residence, must register once a year within five working days of the offender's birthday (§ 290.012, subd. (a)), but transient sex offenders must register once every 30 days in addition to the annual birthday registration (§ 290.011, subds. (a), (c)).

"A transient who moves to a residence shall have five working days within which to register at that address … ." (§ 290.011, subd. (b).) "'Residence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." (§ 290.011, subd. (g).)

"[Any] person who is required to register under the act based on a felony conviction … who willfully violates any requirement of the act … is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years." (§ 290.018, subd. (b).)

Here, appellant, who was registered as a transient, was prosecuted and convicted for failing to report his move to a residential apartment located within the City of Redondo Beach.

4

# FACTUAL AND PROCEDURAL BACKGROUND

## A.    Prosecution Evidence

### 1.    *Overview*

In 2013, appellant was convicted of committing a lewd act with a minor.  Appellant submitted his first sex offender registration with the Redondo Beach Police Department in February 2015.  In 2017, appellant began registering as transient with Redondo Beach Police and thereafter registered on a monthly basis, maintaining his status as transient.

On December 10, 2020, as part of an investigation, appellant was surveilled entering an apartment located at an address on North Elena Avenue in Redondo Beach, using his own key.  The apartment was leased by appellant's friend, Dawn Suskin.  After further investigation, appellant was arrested for failing to register the apartment as his residence.

### 2.    *Appellant's December 2020 Registration*

Stephen Ott worked for the Redondo Beach Police Department as a community services officer assigned to the jail.  His responsibilities included registering sex offenders who lived in Redondo Beach and updating their profiles in the California Sex and Arson Registry (CSAR).  Ott estimated appellant had previously registered more than 30 times, and Ott had personally registered appellant about 15 times.  On December 10, 2020, appellant updated his registration at the police station.  Ott gave appellant a

5

registration packet, which appellant signed and returned. Appellant indicated there were no changes and he remained a transient with no new address.

      3.    *Subsequent Arrest for Registration Violation*

Redondo Beach Detective Ryan Harrison investigated sex crimes and monitored sex offenders that registered within the city. In December 2020, Detective Harrison investigated whether appellant was either residing or located within the city. The detective reviewed appellant's previous registration forms and saw appellant began registering in Redondo Beach as a transient in 2017, continuing this status on a monthly basis thereafter. On several of his 2020 registration forms, appellant indicated he frequented a restaurant and grocery store in a shopping center at Beryl and North Pacific Coast Highway and slept in his vehicle. Appellant's driver's license and vehicle registration forms returned to a UPS store mailbox address located in that same shopping center.

On December 10, 2020, Detective Harrison was informed appellant had come into the Redondo Beach police station for his monthly transient registration. When appellant left the station, officers followed him to an apartment complex on North Elena. Appellant walked to the door of an apartment, unlocked it with a key, and went inside.

Wearing a body camera recording device, Detective Harrison approached the apartment to speak with appellant

6

and conduct a compliance check.  The video was played for the jury.

Appellant said he slept in his car and visited Suskin's apartment during the day, with her permission.  He said he was "basically [there] every day," stating the apartment was the only place he could go to avoid COVID.  He indicated everything in an upstairs bedroom, including clothing, belonged to him.  Appellant also stated that he was concerned Suskin's address would show up on the sex offender registration.

Appellant said "we," meaning himself and Suskin, had no weapons in the home and referred to the cat as "our cat." Mail found at the apartment was addressed to appellant at his UPS mailbox address.  Appellant's cell phone, wallet, keys, and his mail were in a desk drawer in the bedroom. Appellant stated a desktop computer in the bedroom belonged to him.  Detective Harrison determined appellant had registered incorrectly and arrested him.

On March 3, 2022, at 6:30 a.m., Detective Harrison served a subpoena for Suskin at the Elena Street address. Appellant answered the door, stating he had just arrived 10 minutes earlier and that Suskin was asleep.  Appellant told police he had parked around the corner, but officers were unable to locate his car.

4.    *Witness Testimony*

In Fall of 2019, John Lesser moved to an apartment two doors down from Suskin's apartment.  On December 10,

7

2020, Lesser told a detective he believed both appellant and Suskin lived there.[3] Lesser typically saw appellant once or twice a week in the apartment complex, which is as often as he sees his other neighbors. Lesser also saw appellant working on his car in the parking space allotted for Suskin's apartment. However, after speaking with appellant and Suskin, Lesser did not "still believe" that appellant "currently" lives there. Lesser had not seen appellant's car there in a while.

## B.    Defense Evidence

Appellant did not testify. Dawn Suskin testified that she and appellant had been friends since around 2003. She was aware appellant had been convicted of a crime and that he was required to register as a sex offender. Before his conviction in 2013, appellant was homeless at times, and Suskin let him sleep in her living room.

Suskin moved to her apartment on Elena in 2014. In 2015, Suskin picked appellant up "from his release" and brought him to her apartment where he would visit during the day, while sleeping on the street at night. For several years, appellant lived at the Veteran's Association (VA).

Beginning in 2018 or 2019, appellant was no longer able to stay at the VA, so he started spending time at her

_____

[3]    Under the Registration Act, "[a] person who is required to register under the act who willfully violates any requirement of the act is guilty of a continuing offense as to each requirement he or she violated." (§ 290.018, subd. (j).)

8

home almost daily, while sleeping in his car. Suskin told appellant that he could use her apartment but could not live there because Suskin did not want her address listed on the sex offender registry. Appellant typically came to her apartment early in the morning, around 6:00 a.m., to use the bathroom and have coffee. Suskin had insomnia and did not believe appellant ever stayed the night. She gave appellant an apartment key so he had access to a restroom during the day.

Suskin further testified appellant was on parole for five years starting in April 2015 and terminating in April 2020.[4] Suskin stated while appellant was on parole, officers periodically contacted her (either in person or by phone) to ensure appellant was not there "more than he should have been." At some point "possibly" during the last two years of appellant's parole, Suskin was told by a parole officer that appellant could not be there between 10:00 p.m. and 6:00 a.m. Suskin assumed this to mean appellant could visit her as long he did not stay overnight. She assumed this continued to hold true after appellant was off parole. Suskin was not aware of appellant ever being at her home during those hours.

However, in December 2020, just before appellant was arrested, appellant stayed overnight at Suskin's apartment

___

[4]     Suskin testified she believed appellant was released around April 2015 and assumed his parole therefore ended in April of 2020. However, records established appellant began to register as a sex offender in February 2015.

9

for about six nights over a three-week period. Suskin and appellant were concerned about appellant being outside during the COVID-19 pandemic. She believed there were no hotels open in the area.

## C. Charges and Verdicts

In an information filed on September 29, 2021, appellant was charged with failure to register within five days of coming into a new address (§ 290, subd. (b); count 1) and failure to notify the last registering agency of a change of address. (§ 290.013, subd. (a); count 2). Following a jury trial, appellant was found guilty as charged. At the sentencing hearing on April 4, 2022, the court suspended imposition of sentence and placed appellant on formal probation for a term of two years, with the condition he serve a 90-day jail term. Appellant timely appealed.

## DISCUSSION

### A. Sufficiency of Evidence

Appellant contends there was insufficient evidence to support his conviction under either count because the prosecution failed to establish he (1) "resided" at Suskin's home and (2) "willfully" violated the registration requirements. Appellant separately argues that even if these two requirements were met, his conviction on count two must nevertheless be reversed because section 290.013 applies only where a registrant changes from one residence to another, whereas appellant, if anything, changed from

transient status to a residential address.  We agree with the latter contention, but not the first.  Accordingly, we reverse the conviction as to count two, but affirm on count one.

      1.    *Relevant Legal Principles*

The elements of failing to register as a sex offender are the defendant:  (1) was required to register as a sex offender; (2) the defendant knew he had a duty to register "'every residence at which he regularly resides, regardless of the number of days or nights spent there'"; and (3) the defendant "'willfully failed to register . . . every residence at which he regularly resides.'"  (*People v. Gonzales* (2010) 183 Cal.App.4th 24, 32, italics omitted.)  A willful violation occurs when the offender "actually know[s] of the duty to act" and "what act is required to be performed" (*People v. Garcia* (2001) 25 Cal.4th 744, 752) but the willfulness element is not negated by "just forgetting to register." (*People v. Barker* (2004) 34 Cal.4th 345, 350.)

In reviewing a sufficiency of the evidence claim, "[w]e view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028.)  In so doing, we neither question the credibility of witnesses nor reweigh the evidence.  (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)  We must affirm the conviction if the circumstances reasonably support the jury's findings, even if the circumstances might also be reconciled with a

11

contrary finding.  (*People v. Jiminez* (2019) 35 Cal.App.5th 373, 392.)

2.    *The Evidence Is Sufficient to Support the Conviction of Count One*

Appellant was convicted in count one of violating section 290, subdivision (b) which provides, in pertinent part: "Every person described in subdivision (c), [for the rest of his or her life] while residing in California, … shall [be required to] register with … the sheriff of the county … within five working days of coming into, or changing [his or her] residence within, any … county … in which [he or she] temporarily resides, and shall be required to register thereafter in accordance with the Act."  (§ 290, subd. (b).)  Under section 290.011, "[a] transient who moves to a residence shall have five working days within which to register at that address, in accordance with subdivision (b) of Section 290."  (§ 290.011, subd. (b).)

The prosecutor argued appellant failed to change his registration from transient to residing at Suskin's apartment.

a.  *Appellant "Resided" at Suskin's Apartment*

As indicated at the outset of our opinion, "residence" under the Registration Act is defined as "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there."  (§ 290.011, subd. (g).)  "This broad definition is consistent with the legislative

purpose—to prevent recidivism by allowing law enforcement authorities to monitor sex offenders at all times." (*People v. Deluca* (2014) 228 Cal.App.4th 1263, 1267 (*Deluca*); see also *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 ["Ensuring offenders are 'readily available for police surveillance' [citation.] depends on timely change-of-address notification. . . Compliance is essential to that objective; lack of compliance fatal"].)

In evaluating whether sufficient evidence supports the jury's finding that appellant "regularly resided" at Suskin's apartment, we find *People v. Gonzales* (2010) 183 Cal.App.4th 24 (*Gonzales*) instructive.

In *Gonzales*, the defendant registered one address as his residence on Lurelane Street, but was found guilty of failing to register a second residence on Fairhaven Street. During trial, Lurelane neighbors testified the defendant did not appear to be at home overnight. Another witness testified he had seen the defendant at the Fairhaven home numerous times, including "early in the morning or in the evening." That witness had even seen the defendant in "pajamas and house shoes." (*Gonzales*, *supra*, 83 Cal.App.4th at p. 29.) The owner of the Fairhaven home acknowledged that because the defendant helped her with her business he was often present between 10:00 a.m. and 8:00 p.m. (*Id.* at p. 31)

In affirming the judgment, the appellate court held: "There is ample evidence that defendant spent the night at the Fairhaven house, and even if he did not, the evidence

13

was more than sufficient to support the jury's finding that defendant regularly resided at the Fairhaven home in violation of section 290, since he spent a great deal of time there and was at the home on a regular basis." (*Gonzales*, *supra*, 83 Cal.App.4th at p. 34.)

Similarly here, a reasonable juror could find appellant resided at Suskin's apartment within the meaning of section 290.011, subdivision (g). Suskin's neighbor, Lesser, told police appellant and Suskin lived there, and testified he typically saw appellant as often as he saw other residents in the building. Suskin herself admitted appellant had a key and spent most days at her apartment. She further acknowledged appellant stayed overnight for about six nights between the end of November 2020 and December 10, 2020, the day of his arrest. Suskin's apartment was the location at which law enforcement authorities would have been able to regularly monitor or locate appellant had he registered the address.

Further, appellant admitted the items found in the upstairs bedroom belonged to him, including clothing and a desktop. In addition, his cell phone, wallet, keys, and mail, were all found in a desk drawer of the bedroom. Finally, in speaking with police during the compliance check, appellant stated, "*we* don't have any weapons or anything" and initially referred to the cat in the apartment as "*our* Cat Cleo." In light of this record, there was substantial evidence from which the jury could infer that appellant resided at Suskin's apartment within the broad meaning of section

290.011, subdivision (g).  (*See Gonzales*, *supra*, 183 Cal.App.4th at p. 34; see also *People v. Moore* (2016) 6 Cal.App.5th 73, 90 ["it is the jury's prerogative, not ours, to weigh the evidence"].)

b.     *Appellant "Willfully" Violated the Registration Requirements*

"[A] violation of section 290 requires actual knowledge of the duty to register."  (*People v. Garcia*, *supra*, 25 Cal.4th at p. 752.)  "A jury may infer actual knowledge from notice and other circumstantial evidence."  (*People v. Aragon* (2012) 207 Cal.App.4th 504, 511 (*Aragon*); see also *People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 [observing, generally, that "'[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction'"].)

Appellant argues insufficient evidence supports the jury's verdict because "[t]he evidence of [his] actual knowledge he could be deemed a resident of Suskin's apartment was thin at best."  We disagree.

First, the parties stipulated appellant was notified of his registration requirements "pursuant to the Sex Offender Registration Act," under "section 290 through 290.023," and that he acknowledged all these registration requirements by signing and dating the appropriate form on February 1, 2015.

Second, the numerous monthly registration forms submitted by appellant included the admonishment that if a

15

transient obtained a residential address, he must update the registration within five days of that change. These forms included the statutory definition of residence outlined in section 290.011, subdivision (g).

Third, when confronted by police during the December 10, 2020, compliance check, appellant made various admissions and statements indicating he was living at Suskin's apartment, while repeatedly adding he did not want Suskin's apartment to be registered due to her work. As reasonably argued by the prosecutor, appellant's admission that he did not want Suskin's address to show up on the sex offender registry provided a motive for why appellant would willfully or knowingly violate the registration requirements by failing to report her address as his residence. (*People v. Moore*, *supra*, 6 Cal.App.5th at p. 85 [explaining that although the prosecution need not prove motive, "motive is relevant, and a strong motive provides powerful evidence"].) Appellant later commented (when police were on the phone with Suskin) that she was "trying to save [his] ass" and wanted to protect him. This evidence was more than sufficient to support the element of actual knowledge.

3. *The Conviction of Count Two Must Be Reversed*

Appellant was convicted in count two of violating section 290.013, subdivision (a), which provides: "Any person *who was last registered at a residence address pursuant to the Act* who changes his or her residence address, whether within the jurisdiction in which he or she is currently

16

registered or to a new jurisdiction . . . shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move, the new address or transient location, if known, and any plans he or she has to return to California." (§ 290.013, subd. (a), italics added.) Thus, section 290.013 applies to "an offender who was last registered at a residence address who leaves that residence" and "also applies if the offender who previously registered at a residence has now become transient." (*People v. Armas* (2011) 191 Cal.App.4th 1173, 1178.) It does not apply to an offender who is registered as a transient and subsequently moves into a residence. (*Ibid.*)

Respondent's only argument to counter this conclusion is to state that appellant "previously registered with the Redondo Beach police in September 2020 that he was *residing* at the Best Western Hotel on South Pacific Coach (sic) Highway." However, appellant did not register the hotel as a "residence" but merely noted the overnight hotel stay as an additional "location" while transient — which, as Detective Harrison explained was "encouraged" but not required and, as Officer Ott testified, did not alter appellant's transient status. Moreover, appellant continued to register as transient in October, November, and December prior to his arrest, and the prosecutor's sole theory for both counts was that appellant was no longer transient, had taken up residence in Suskin's apartment, and knowingly

17

and intentionally hid his new status.[5]  As such, there was no evidence that appellant was an offender "who last registered at a residence" within the meaning of section 290.013, subdivision (a).  We accordingly reverse appellant's conviction for count 2.

## B.    Vagueness Challenge to Statutory Definition of "Residence"

Appellant contends the definition of "residence" under section 290.011, subdivision (g) is constitutionally vague as applied to the circumstances his case, incorporating his sufficiency of evidence challenge to the knowledge requirement.  In light of the evidence adduced on the issue of appellant's knowledge of the need to report North Elena Avenue address, we reject appellant's challenge.  (*Gonzales*, *supra*, 183 Cal.App.4th at p. 39 [rejecting as-applied vagueness challenge to section 290.011(g) because under any plausible reading of section 290.011 (g), appellant was required to register the address at issue]; see also *Deluca*, *supra*, 228 Cal.App.4th at p. 1267 [observing "[t]here is nothing uncertain about the language of section 290.011, subdivision (g)"].)

---

[5]     Indeed, in closing, the prosecutor argued appellant "regularly" and "consistently" lived at Suskin's apartment, stating it "wasn't just a one-time thing.  This wasn't like the Best Western.  This is a place where he resided . . . He needed to and was required to list it under count 2 and count 1."

**C. Midtrial Motion for Mistrial or Continuance**

Appellant contends the trial court erred by denying his midtrial motions for a mistrial or continuance after a reference to his parole status was admitted and that his constitutional rights were violated by both rulings. On this record, we discern no reversible error.

1. *The Trial Court Did Not Err In Denying The Mistrial Motion*
   a. *Proceedings in Trial Court*

Before trial, the prosecutor noted that in the video of appellant's statements to Detective Harrison, appellant mentioned he was, or might have been on parole. The court stated any references to appellant's parole status should be removed.

During trial, the prosecutor played the video recording for the jury and provided written transcripts that included one unredacted reference to parole. Defense counsel noted the issue, and the prosecutor apologized, explaining he redacted the parole reference several lines earlier, but missed this reference as it was "muffled" on the audio portion of the tape. The court denied the mistrial motion, noting both parties had the transcript before the video was presented to the jury.

The trial court offered to admonish the jury not to consider the parole reference, but defense counsel, recognizing that this would only highlight a slight reference, declined.

The prosecutor redacted the parole reference in the transcript and replaced the transcripts given to the jury with the new version. The prosecutor noted the reference was less than one second of muffled audio. The court agreed the parole reference was difficult to understand from the audio and found the prosecutor's failure to make the redaction was inadvertent. The court further noted the jury was already aware appellant was convicted of a serious offense in light of the registration requirement.

b.    *Analysis*

"Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Haskett* (1982) 30 Cal.3d 841, 854) Further, in reviewing a ruling on a mistrial motion, the appellate court may consider the context of the trial at the time of the allegedly prejudicial event. (*People v. Woodberry* (1970) 10 Cal.App.3d 695.)

Here, as the trial court found, appellant's reference to his parole status was muffled in the video, fleeting, and the written transcript was redacted shortly after the error was discovered. (See *People v. Franklin* (2016) 248 Cal.App.4th 938, 956 [upholding denial of mistrial because three "vague and fleeting references to appellant's criminal history" did not result in "incurable prejudice or irreparably damage[e] . . . appellant's chance of obtaining a fair trial"]; see also *People v. Bolden* (2002) 29 Cal.4th 515, 554-555 [mistrial

20

motion properly denied after witness mentioned that he found defendant's address at the parole office].)

Citing *People v. Allen* (1978) 77 Cal.App.3d 924 (*Allen*), appellant nevertheless insists the statement about his parole status necessitated a mistrial. However, the facts of *Allen* are distinguishable. In *Allen*, a rebuttal witness mentioned the defendant's alibi witness told her defendant was on parole. (*Id*. at p. 934.) On appeal, the reviewing court held the denial of a mistrial was reversible error. In so concluding, the appellate court found the case was "extremely close" and noted the parole was the result of a juvenile conviction which "cannot be deemed a conviction of a crime for any purpose." (*Id*. at pp. 934-935.)

Here, by contrast, the jury was already aware appellant had been convicted of a crime that required him to register as a sex offender, and evidence he was residing at Suskin's apartment within the meaning of section 290.011(g) was strong. As such (and in light of the aforementioned authority upholding denials of mistrials in similar circumstances), *Allen* does not warrant a different result.

2. *The Trial Court Did Not Err in Denying A Continuance*

a. *Proceedings in Trial Court*

After defense counsel renewed her mistrial motion, she alternatively requested a continuance to produce appellant's prior parole agent Ms. Tobias. Counsel stated she did not subpoena the agent so the jury would not learn appellant

21

had been to prison, but in light of the parole reference, she wanted "some time to be able to get Miss Tobias in to testify." Counsel stated she had tried to contact Ms. Tobias "the other day" had again tried over the recent lunch hour, without success.

The court denied the request, stating it was not clear how Agent Tobias' testimony would support a defense and trial counsel had not subpoenaed Agent Tobias. The court further expressed concern jurors might become ill or contract COVID, which would further delay the trial.

Trial counsel added had she known the jury would learn appellant was on parole, she would have called the parole officer to testify she gave appellant "permission to be at that address and not have it listed as a residence." The court responded that "being told you can . . . break the law" was not a defense to the crime. Counsel agreed, but noted that it went "to the knowledge requirement" of the crime. The court stood by its ruling.

Counsel then requested, notwithstanding the court's exclusion of the word "parole" from the audio and transcript, permission to discuss parole in front of the jury. The court granted the request. Suskin later testified Agent Tobias told her, sometime in the past two years, that appellant could visit during daytime hours.

b. *Analysis*

A continuance in a criminal case may be granted only for "good cause". (§ 1050, subd. (e).) Whether good cause

exists is a question for the trial court's discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) The court must consider "'"not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion."'" (*Ibid.*) "Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1126.)

Here, appellant has failed to make the requisite showing for reversible error. First, counsel had not subpoenaed Agent Tobias, had previously tried to reach her with no success, and again failed in attempting to do so the day she made the continuance request. Under these circumstances, including the trial court's concerns the trial would be delayed and the jury could contract COVID, the denial of a continuance was not an abuse of discretion. (*People v. Beames* (2007) 40 Cal.4th 907, 920 [observing "an order denying a continuance motion is seldom successfully attacked"]; cf. *People v. Winbush* (2017) 2 Cal.5th 402, 470 [in light of counsel's unsuccessful attempt to locate the key witnesses, the trial court acted well within its discretion in concluding an additional continuance, with no proffered basis to expect success, was unjustified].)

Second, appellant has failed to demonstrate prejudice. Trial counsel's explanation as to what Agent Tobias might state in her testimony was vague and conclusory, and the

23

record does not demonstrate Agent Tobias would have testified in a manner consistent with Suskin. (*People v. Fain* (1959) 2 Cal.5th 402, 862 [no abuse of discretion to deny continuance where counsel was "without exact statements of what the witness would testify to and without appropriate affidavits"]; *People v. Waidla* (2000) 22 Cal.4th 690, 749, fn. 1 [stating an appeal is limited to the four corners of the appellate record]; *People v. Venegas* (1994) 25 Cal.App.4th 1731; 1741-1742 [noting, in context of ineffective assistance of counsel (for failing to further pursue potential witness) in direct appeal: "Nor does the appellate record show prejudice. We simply do not know how [the witness] would have testified"].)

Moreover, Suskin testified that appellant did, in fact, stay at her apartment overnight multiple nights prior to his arrest, and the evidence he was staying there was, as indicated by the record, abundant. As such, appellant has not shown sufficient grounds for reversal. (See *People v. Beames*, *supra*, 40 Cal.4th at p. 920 [appellate record failed to show any actual prejudice resulted from denial of continuance].)

## D.    Cross-Examination of Suskin

Appellant contends the trial court abused its discretion by permitting the prosecutor to cross-examine Suskin on circumstances relating to her knowledge of appellant's 2013 conviction. He claims this testimony was irrelevant and

24

unduly prejudicial.  We disagree.  The court acted within its discretion in allowing a limited inquiry into the matter.

    1.    *Relevant Proceedings*

Before trial, the prosecutor agreed not to discuss the underlying facts of appellant's section 288 conviction.

During direct examination, Suskin testified she was aware appellant was convicted in 2013 of a crime requiring registration as a sex offender.  Suskin and appellant had been friends since 2003 or 2004, having originally met as co-workers.  Appellant was going through a divorce and before his conviction in 2013, they did things together, including spending time together with his "at the-time two children" at the park or at "Chuck E. Cheese or McDonald's for lunch."

Suskin maintained her friendship with appellant and after his "release" in 2015, she brought him to her home and let him stay there during the day.  Suskin testified appellant was "like family" and and that she gave him a key to her apartment, knowing she could trust him not to take advantage of the situation.

Before direct examination of Suskin concluded, the prosecutor noted Suskin had testified about the time she spent with appellant and his children before 2013.  Because the victim of appellant's conviction for a lewd act was one of his daughters, the prosecutor argued Suskin had implicitly elicited testimony as to his character that went directly to the issue of his conviction.  That is, a rational juror could infer appellant was a good person and a good father because

25

he was allowed to spend time with his children after his divorce.

Defense counsel countered she did not call Suskin as a character witness and simply elicited the testimony to establish their friendship. The court disagreed, observing "there's no doubt that the information came out about his contact with his children to portray him as a loving father, as a good person and trustworthy, and it's all part that goes along with her testimony." And now the prosecutor was simply stating "there's a different angle to this father-like figure to his children that's to be trusted." However, the court noted the prosecutor must "tread carefully" and asked the prosecutor how he intended to explore the issue.

The prosecutor stated his intention would be to elicit testimony that Suskin has not seen the defendant with his children since 2013 and she is aware of the nature and charges of which he was convicted in 2013. The prosecutor also intended to ask Suskin whether she attended any of the proceedings in defendant's case and whether she is aware of any facts of the case independent of what appellant has told her.

Defense counsel stated she could understand why the questions "do you know what happened in that case" and "have you seen him with the children since then" might be allowed, but did not see why the last question — i.e. Suskin's independent knowledge of the facts — was necessary. The prosecutor stated he would withdraw the last question, and the court stated, "fair enough."

On cross-examination, the prosecutor asked Suskin if she had seen appellant with his children since 2013, and Suskin replied, "No." She also testified she was aware of the type of charges of which appellant was convicted of in 2013, and she attended some of the proceedings in that case because she was his friend. The prosecutor's line of questioning garnered no objections from defense counsel.

2. *Analysis*

The trial court has broad discretion in determining the relevance of evidence, but lacks the discretion to admit irrelevant evidence. (*People v. Crittenden* (1994) 9 Cal.4th 83, 132.) A trial court's exercise of discretion in admitting or excluding evidence is reviewable by an appellate court for abuse of discretion and will not be disturbed absent a showing the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Mills* (2010) 48 Cal.4th 158, 195; *People v. Rodrigues* (1994) 8 Cal. 4th 1060, 1124-1125.)

Here, notwithstanding defense counsel's assertions to the contrary, the testimony elicited by defense counsel from Suskin included implicit characterizations of appellant's character as good or positive. This testimony opened the door to the brief line of inquiry pursued by the prosecutor. (See *People v. Hawara* (2021) 61 Cal.App.5th 704, 712-713 [once witness testifies to defendant's good character based on his or her own perceptions, it is appropriate to cross-examine

27

the witness regarding the underlying basis for the perception].)

We further note that during an earlier discussion regarding proposed jury instructions, the court asked if either party intended to put on character evidence. Defense counsel stated she intended to call the owner of the apartment (Suskin) "and there definitely probably will be character evidence that comes out during her testimony" such as "the reasons why she was allowing him to stay during COVID and not to live with her will probably go to his character." This is what occurred during defense counsel's examination of Suskin, wherein Suskin implied appellant was worthy of her continued trust (and unfettered access to her apartment) because he was not someone who would flout the rules due, in part, to the time she spent with him and his two children and their "like family" connection.

In any event, the prosecutor did not elicit facts regarding the underlying conviction and stayed within the limits discussed by the court and parties. As such, we discern no abuse of discretion in the court's ruling.

## E.     Challenges to Testimony of Officer Ott

Appellant contends that various lines of testimony given by Officer Ott amounted to an improper opinion on appellant's guilt. Appellant's claims are forfeited for lack of objection, and he has failed to demonstrate a viable exception to the forfeiture rule.

28

1. *Challenged Testimony*

Appellant argues Ott improperly testified: (1) "changing one's residence was not "limited to . . . leasing an apartment . . . [but] can occur for something less;" (2) the box labeled "address/registration definitions" are to "help" a registrant understand what they are being asked to state on that part of the form; (3) the information provided under "locations frequented by a transient" might include areas frequented by transient such as "Redondo Beach Pier" or physical addresses where the transient showers or grooms, works, or attends school; and (4) Ott agreed with the prosecutor that a registrant who moved back to an earlier address would "usually have to come in and fill out that change of address registration event."

Appellant argues that this testimony was tantamount to Ott testifying appellant was, in essence, required to register Suskin's apartment. (*People v. Clay* (1964) 227 Cal.App.2d 87, 98 ("It is a settled and long-established rule . . . that a witness cannot express an opinion concerning the guilt or innocence of the defendant"].)[6]

2. *Appellant Forfeited His Claims*

Reviewing courts will generally not consider a challenge to the admissibility of evidence in the absence of

---

[6]     Officer Ott was not designated as an expert witness, and we therefore assume his testimony was offered as a lay witness. (See footnote 9, *post*.)

29

"'"a specific and timely objection in the trial court on the [same] grounds sought to be urged on appeal."'"" (*People v. Champion* (1995) 9 Cal.4th 879, 918; *People v. Raley* (1992) 2 Cal.4th 870, 892; see Evid. Code, § 353, subd. (a).)

Here, trial counsel objected to the prosecutor's questions of Officer Ott on two occasions: (1) a question asking where on the registration document a transient would list the address of a residence wherein they "shower or groom," as assuming facts not in evidence and improper hypothetical and (2) a question regarding Megan's Law, as leading. Accordingly, appellant's contentions that Ott's testimony amounted to improper legal opinions and/or expressions of appellant's guilt of the charged crimes are forfeited. (*People v. Dykes* (2009) 46 Cal.4th 731 (*Dykes*), 756-757; *People v. Demetrulias* (2006) 39 Cal.4th 1, 19-21 (*Demetrulias*).) The same holds true for appellant's separate contention that the admission of the evidence violated his constitutional rights. *People v. Prince* (2007) 40 Cal.4th 1179, 1229-1130 (*Prince*) [constitutional error not raised in trial court forfeited on appeal]; *Demetrulias*, *supra*, at p. 21, fn. 3 [same]; *People v. Partida* (2005) 37 Cal.4th 428, 437-438 (*Partida*) [holding if constitutional error is subsumed within (or merely a gloss on) state law error objection it may be reviewed on appeal; otherwise claim is forfeited].)

To the extent appellant argues we should find exception to the forfeiture rule on grounds that any objection would have been futile, we disagree. In support of this argument, appellant cites other objections, to different lines

of testimony, made by counsel throughout trial, which the court did not sustain.[7]  Appellant does not show that trial counsel's repeated objections to the specific evidence at issue were overruled such that further objections would be futile. This is inadequate to overcome application of the forfeiture rule.  (See *Dykes*, *supra*, 46 Cal.4th at pp. 756-757; *Demetrulias*, *supra*, 39 Cal.4th at pp. 20-21; cf. *People v. Gomez* (2018) 6 Cal.5th 243, 287 [finding further objection futile where trial counsel repeatedly sought to exclude specific evidence challenged on appeal on various state law grounds, trial court cut off counsel's argument, and court made clear its intention to admit testimony on the point even if it had to be a "'pioneer'" on the issue].)

     3.    *Appellant Has Failed To Demonstrate Trial Counsel Was Ineffective For Failing to Preserve These Issues*

Appellant argues that, to the extent his evidentiary claim is forfeited, his defense attorney rendered ineffective assistance for failing to timely object.  Appellant has failed to satisfy his burden on the issue.  (*People v. Mickel* (2016) 2 Cal.5th 181, 198 [A defendant bears the burden of demonstrating ineffective assistance of counsel].)

---

[7]    Appellant also declares, without argument or supporting authority, "an admonition would not have cured the resulting prejudice."

31

"'[A] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736 (*Woodruff*).) Reversal is permitted "'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'" (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.) In addition, "prejudice must be affirmatively proved" on the trial record. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

Here, appellant has failed to demonstrate trial counsel was ineffective. First, Officer Ott's testimony aimed to explain the registration process and based on his experience in having registered around 300 sex offenders, including appellant, since 2015. His testimony was generally helpful for the jury to understand the registration process. (*People v. Farnam* (2002) 28 Cal.4th 107, 153, citing Evidence Code, § 800, subds. (a) and (b); *People v. McAlpin* (1991) 53 Cal.3d 1289, 1306, fn. 11.)

Second, trial counsel herself questioned Officer Ott (and Detective Harrison, see Argument F, *post*), on the registration forms and requirements to support her defense of appellant.

In her opening argument, counsel told the jury appellant registered every 30 days as a transient and "provided [police] with all of the areas he frequented while he was homeless and living in his car, which were all within a four-block radius of Suskin's house." However, she argued the jury would not find evidence appellant needed to register Suskin's home as a residence. Defense counsel told the jury appellant provided Suskin's address to police in 2015 and there was "no reason for [appellant] . . . to hide this residence or hide this location."

During her cross examination of Detective Ott, counsel focused on the locations a transient might report in the "locations frequented" section, and how specific or vague this information was for transient registrants. Counsel further elicited testimony that a print-out from the CSAR database, which contained an overview of all addresses that had been associated with appellant "at any point," included Suskin's Elena Street address.[8] Counsel used this testimony to argue to the jury that appellant did not knowingly and willfully violate the registration requirements. (*People v. Bolin, supra*, 18 Cal.4th at p. 333 ["Tactical errors are generally not

_____

[8] During cross-examination, Detective Harrison testified Suskin's address was provided to the Department of Corrections when appellant was initially released from incarceration. However, appellant changed his address shortly thereafter, was out of jurisdiction in Los Angeles for a period of time, and did not report Suskin's address on any of his sex offender registration forms in Redondo Beach thereafter. To the extent he resided at her apartment, he was obligated to report a change in his transient status within five days.

deemed reversible, and counsel's decision-making must be evaluated in the context of the available facts"].)

However, ultimately appellant was prosecuted for failing to report Suskin's address as a "residence" as that term was defined not only by statute but also in his registration forms. The evidence that his failure was willful and knowing was strong, based on his own admissions, Suskin's testimony, and the physical evidence of his possessions at the apartment. The fact that appellant never reported Suskin's address as a location he frequented throughout his numerous transient registrations cut against any assertion that he innocently, inadvertently, or unknowingly failed to report his change of status and supported the prosecutor's contention that he was motivated to obscure his move into the apartment. In sum, appellant has failed to demonstrate counsel's failure to object to Ott's testimony was without any satisfactory explanation or that an alternate approach would have yielded a more favorable outcome. (*People v. Lewis* (1990) 50 Cal.3d 262, 288-289 ["It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable"]; *People v. Gray* (2005) 37 Cal.4th 168, 212 [rejecting ineffective assistance of counsel claim where no prejudice resulted].)

**F.    Challenges to Testimony of Detective Harrison**

Appellant challenges various lines of testimony by Detective Harrison, arguing they amounted to improper opinions as to appellant's guilt.  As background, appellant summarizes the following testimony by Detective Harrison.

1.    *Challenged Testimony*

Detective Harrison, a sex crimes detective, testified he arrested appellant after an investigation into appellant's registration compliance.[9]  During his investigation Harrison reviewed appellant's sex offender registration forms, his prior vehicular registration and DMV forms, which led him to a UPS mail store near Suskin's apartment.  Harrison noted that appellant's registration form for September 2020, listed an overnight stay at the Best Western Hotel, with the address, under locations "frequented" and that same registration form contained an admonishment notifying appellant if he were to acquire a residence -- or place that could be construed as a residence under the forms -- then he would have to provide that notification to the police

---

[9]    We note that although the prosecutor indicated early in the trial that Detective Harrison may testify as an expert, Detective Harrison was not offered as an expert, and the trial court did not designate him as such.  Moreover, the jury was not provided with an instruction on expert testimony, but only lay testimony opinion.  (See, Argument G, *post*) (Cf. *People v. Becerrada* (2017) 2 Cal.5th 1009, 1032 (*Becerrada*) [stating it was unclear from record whether evidence offered by officer was admitted as expert opinion and thus assuming it was admitted as lay opinion]; *People v. Phillips* (2022) 75 Cal.App.5th 643, 682-683.)

department.  Otherwise, "he would be in violation of . . . his 290 status."

In explaining why he arrested appellant for violating the registration requirements, Detective Harrison stated when he followed appellant to Suskin's apartment, he saw appellant used his own key for entry and did not "knock on [Suskin's door] and wait to be let in" and then entered "as if he resided there."  He also found various other pieces of information significant, including appellant's own statements to police, and the discovery of appellant's mail inside the desk drawer of the bedroom.  Detective Harrison concluded that, "based on all those things, we made the determination that [appellant] had, in fact, been registering incorrectly, per the terms of California Penal Code section 290."

2. *Appellant's Improper Opinion Challenges Are Forfeited*

As previously explained, to preserve an evidentiary issue for appellate review, a defendant must demonstrate he or she objected on the same grounds below.  (*Dykes*, *supra*, 46 Cal.4th at p. 756).  Appellant points to no objections to Harrison's testimony made on the grounds of improper opinion.  Accordingly, any arguments based on these grounds are deemed forfeited.  The same holds true for appellant's assertions of federal constitutional error. (*Prince*, *supra*, 40 Cal.4th at pp. 1229-1130; *Partida*, *supra*, 37 Cal.4th at pp. 437-438.)

To the extent appellant argues exceptions to the forfeiture rule, appellant relies on the same arguments made in relation to Officer Ott's testimony. As previously indicated in our opinion, these arguments are insufficient to overcome application of the forfeiture rule. (See Argument E, subsection 2, *ante*)

3.    *Appellant's Additional Challenges Are Equally Forfeited*

In his opening brief, appellant makes several additional challenges to Detective Harrison's testimony, which are equally forfeited.

First, under a separate heading entitled "Detective Harrison Improperly Testified: (1) Appellant Was Residing at Suskin's Rather Than Living As A Transient; (2) Appellant Knew He Was No Longer Transient; and (3) Appellant Intentionally Sought To Hide Suskin's Address" appellant string cites to the same trial testimony by Detective Harrison summarized above, and then asserts "[t]his was improper opinion testimony, was irrelevant . . . was unfairly prejudicial and likely to confuse and mislead the jury under Evidence Code section 352." However, the argument that follows is simply a repetition of his assertion that Harrison engaged in improper opinion testimony, with no argument on the other asserted grounds. Accordingly, we need not, and do not, address these contentions here. (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87

37

Cal.App.5th 1048, 1065*; Pizarro v. Reynoso* (2017) 10
Cal.App.5th 172, 179.)

Second, under a heading entitled "Detective Harrison Improperly Testified That People Who Rented Postal Mailboxes At Appellant's Specific UPS Store Were 'Maybe' Trying To Conceal Their Whereabouts To Commit Crimes" appellant argues Harrison's testimony on this point was lacking in "personal knowledge," inadmissible hearsay, irrelevant, unfairly prejudicial under section 352, and improper character evidence. However, the only objection to Harrison's UPS store testimony was based on lack of foundation, which was followed by additional testimony that provided the *requested* foundation — namely, that based on Detective Harrison's training and experience (and discussions with investigators from the United States Postal Service) the UPS store was required to obtain a physical address from a customer seeking to rent a mailbox.[10]

---

[10] When Harrison made the observation referenced by appellant — i.e. that based on this training and experience, he was aware that individuals who are making it difficult to locate them or engaging in various criminal activities "will often get mailboxes that aren't specific to their actual physical residential address and" — trial counsel interjected a "nonresponsive to foundation" objection, and Harrison moved on to state the response identified above.

Appellant asserts Detective Harrison's statement "had nothing to do with establishing foundation as to how to rent a UPS mailbox at appellant's UPS store." However, we discern no actionable error. The testimony was provided in the context of Harrison explaining why he proceeded to the UPS store during his investigation of appellant. (See, generally, *People v. Virgil* (2011) 51 Cal.4th 1210, 1253-1254
*(Fn. is continued on the next page.)*

Third, appellant contends Detective Harrison's testimony regarding the importance of compliance checks for sex offenders and that, in his experience, previous compliance checks involving other registrants had resulted in information that prevented potential crimes was "irrelevant and unfairly prejudicial" and "improper character evidence." Appellant interposed no objections to this background testimony, and these challenges are therefore forfeited.

Fourth, appellant contends Detective Harrison improperly testified, on rebuttal, that he had never heard a parole officer tell a registrant they could "withhold listing a residential address on official paperwork" and opined such advice could result in a "great deal of liability" for the officer. Appellant argues such testimony was improper opinion and prejudicial under section 352. However, appellant interposed no objection to this rebuttal testimony, and we accordingly deem these challenges forfeited as well.

Fifth, and finally, appellant challenges additional testimony by Detective Harrison, regarding the registration form requirements as improper "opinions on questions of

[detective's testimony helpful for jury to understand how he came to suspect defendant]; *Becerrada, supra,* 2 Cal.5th at p. 1032, [no error in admitting correctional officer's testimony as lay opinion where it was based on his knowledge and experience and court could not conclude admission of testimony lacked any rational basis or failed to clarify his testimony]; see also *People v. Jablonski* (2006) 37 Cal.4th 774, 833 ["assuming only for argument's sake" that witness's comment was "in any way inappropriate" no prejudice resulted].)

law." However, the record citations provided by appellant are all, save one, directed at testimony elicited by *defense counsel* during cross-examination and the testimony elicited on redirect examination by the prosecutor garnered no objection. As such, there is no preserved issue for review.

4. *Appellant Has Failed To Demonstrate Ineffective Assistance of Counsel*

Appellant contends that if any of his contentions are deemed forfeited for failure of trial counsel to interpose an objection, then trial counsel was ineffective for failing to so do. However, as previously indicated appellant must show not only that there was no satisfactory basis for counsel's inaction, but the outcome would have been different had counsel challenged the testimony at issue. (*Woodruff, supra*, 5 Cal.5th at p. 736.) Appellant cannot meet this standard.

First, the testimony challenged by appellant as improper opinion, was elicited in the context of Detective Harrison explaining his background investigation and the events that led to appellant's arrest and were relevant for this purpose. (*People v. Virgil, supra*, 51 Cal.4th at pp. 1253-1254; *Becerrada, supra*, 2 Cal.5th at p. 1032.)

Second, appellant's trial counsel utilized the fact that Detective Harrison had reviewed all of appellant's previous monthly registrations, to elicit detailed testimony that appellant, on multiple registrations as a transient, listed areas he frequented and motels where he stayed overnight. As with Officer Ott, counsel further elicited testimony from

40

Detective Harrison, that all addresses previously provided by appellant appear in the CSAR database, which included, at one point, the Elena Street address. Finally, counsel cross-examined Detective Harrison on the locations a transient might report in the "places frequented" section and how specific—or even necessary—this information was for transient registrants. In other words, counsel herself sought to elicit opinions from Harrison on requirements in the registration process.

As previously explained, on this record, we cannot conclude defense counsel's approach was strategically untenable. (*People v. Lewis, supra*, 50 Cal.3d at pp. 288-290.) Nor has appellant shown a more favorable outcome would have resulted if counsel had pursued a different approach or objected to the challenged testimony. (*People v. Gray, supra*, 37 Cal.4th at p. 212.)

## G. CALCRIM No. 333

The jury was instructed with CALCRIM No. 333, the standard instruction on lay opinion testimony; the parties agreed to the instruction.[11] Appellant makes no argument

---

[11] The instruction, as given, provided, "A witness, who was not testifying as an expert, gave their opinion during the trial. You may but are not required to accept those opinions as true or accurate. You may give the opinions whatever weight you think appropriate. Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons given for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which
*(Fn. is continued on the next page.)*

that CALCRIM No. 333 improperly stated the law, but simply argues that it "magnified" the prejudice from the opinions provided by Detective Harrison and Officer Ott.

Even assuming appellant's instructional challenge is not forfeited by his failure to object below (§ 1259), the instruction was proper. Lay opinion testimony was, in fact, admitted at trial, including John Lesser's testimony on whether he personally believed appellant actually lived in Suskin's apartment based on his perceptions as a neighbor. (See CALCRIM No. 333; Evid. Code, § 800; *People v. Phillips*, *supra*, 75 Cal.App.5th at pp. 682-683.) As such, appellant has failed to demonstrate instructional error.

## H.    Prosecutorial Misconduct Claims

Appellant argues the prosecutor committed prejudicial misconduct during trial and closing argument.

As to the prosecutor's trial conduct, appellant contends the prosecutor: (1) asked repeated questions of John Lesser, to improperly create the false impression Lesser believed appellant lived at Suskin's apartment; (2) asked improper "were they lying" questions of Suskin regarding appellant and Lesser's statements; and (3) failed to comply with the

---

the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

trial court's order to redact all references to parole and elicited improper testimony from Detective Harrison.[12]

As to closing argument, appellant contends the prosecutor: (1) mischaracterized Lesser and Suskin's testimony as to whether appellant actually attended or participated in a resident's-only gathering in 2019; (2) mischaracterized the defense's parole-related evidence; (3) improperly "implied" appellant may have violated his parole; (4) and improperly argued that appellant, and sometimes Suskin, were the only people who used the "communal" computer in the apartment.

We conclude appellant has forfeited his assertions of prosecutorial misconduct by failing to interpose objections, and request admonitions, at trial.

1. *Prosecutorial Misconduct Claims and Forfeiture Rules*

A prosecutor's conduct violates the Fourteenth Amendment to the United States Constitution when it infects the trial with such unfairness as to make the

---

[12] In making this third argument for prosecutorial misconduct, appellant incorporates his previous briefing arguments directed at the court's denial of his mistrial motion and his challenges to Detective Harrison's testimony as improper opinion. Appellant also notes the prosecutor, at one point, asked a follow-up question about the genesis of "Megan's Law" after the court sustained a defense objection for lack of relevance. However, the initial objection to the testimony was for lack of foundation, and the prosecutor was attempting to lay that foundation during this line of inquiry.

43

conviction a denial of due process. (*Darden v. Wainwright* (1986) 477 U.S. 168, 181; *People v. Parson* (2008) 44 Cal.4th 332, 359 (*Parson*)). Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Jablonski*, *supra*, 37 Cal.4th at p. 835.)

To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a specific timely objection and request the trial court to admonish the jury. (*Parson*, *supra*, 44 Cal.4th at p. 359; *People v. Brown* (2003) 31 Cal.4th 518, 553.)

2. *Appellant Has Forfeited His Claims of Prosecutorial Misconduct and Has Failed To Demonstrate Ineffective Assistance of Counsel With Regard To These Issues*

In the final subheading of his prosecutorial misconduct claims, appellant asserts "these misconduct issues *were adequately preserved*, but if not, trial counsel was ineffective." Appellant, however, points to no objections to these assertions of misconduct (or request for admonition, see footnote 7, *ante*); nor does he, in his reply brief, refute respondent's assertions that he failed to object to these alleged instances of prosecutorial misconduct. Instead, appellant simply reincorporates his previous arguments (made in relation to his evidentiary objections) that any

objection would have been futile or any admonition ineffective to cure any potential error. Alternatively, appellant contends "there can be no reasonable explanation for trial counsel to not have objected and sought curative admonitions" and "[t]hus, if any of these misconduct issues are forfeited, trial counsel rendered ineffective assistance."

In light of our previous discussions, the strength of the evidence, and the record in relation to the issues raised, appellant has failed to demonstrate any viable exception to the forfeiture rule or that trial counsel failed to act in a manner that resulted in demonstrable prejudice. (*People v. Arredondo*, *supra*, 8 Cal.5th at p. 711; *Woodruff*, *supra*, 5 Cal.5th at p. 736; *People v. Brown, supra*, 31 Cal.4th at p. 553.)

## I. Cumulative Error

Appellant contends the trial errors he has alleged, even if not individually prejudicial, resulted in a cumulative prejudice that rendered his trial fundamentally unfair. In light of our disposition of the issues, we disagree. (See *People v. Cain* (1995) 10 Cal.4th 1, 82 [rejecting assertion of cumulative error, and observing "[d]efendant was entitled to a fair trial, not a perfect one"]; *People v. Marshall* (1990) 50 Cal.3d 907, 945 [same]; cf. *People v. Hill* (1998) 17 Cal.4th 800, 844 [acknowledging that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error" but

appellant must make "a clear showing of a miscarriage of justice"].)

### DISPOSITION

Appellant's conviction for count two, section 290.013 is reversed.  On remand, the trial court shall enter an order dismissing the conviction for that count.  The judgment is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.